Euphrosine A. Rey (formerly Euphrosine A. Will), as Administra-trix, etc., of John A. Will, Deceased, Respondent, v. The Equitable Life Assurance Society of the United States, Appellant.

*Life insurance — conditional delivery of a policy — receipt of the insured so stating — no question for the jury — a party bound by a witness called by him and not contradicted.*

Where a policy of insurance is delivered to the insured, who some time thereafter delivers to the insurance agent a receipt in which he states that the policy is "held for examination and not in force as no premium has been paid," the receipt represents the contract between the parties under which the policy was delivered, and so long as it is not impeached establishes the fact that there was no complete delivery of the policy. Under such proof it is erroneous for the court to submit to the jury the question whether there was such a delivery of the policy as to make it binding on the company.

Where an examining physician of the insurance company is called by the plaintiff his testimony (so far as it is uncontradicted) must be accepted by the plaintiff as that of a credible witness.

Appeal by the defendant, The Equitable Life Assurance Society of the United States, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 15th day of April, 1896, upon the verdict of a jury, and also from an order entered in said clerk's office on the 14th day of April, 1896, denying the defendant's motion for a new trial made upon the minutes.

*Allan McCulloh,* for the appellant.

*Charles O. Maas* and *William Victor Goldberg,* for the respondent.

Rumsey, J.:

In the latter part of December, 1893, John A. Will, the husband of the plaintiff, made an application to an agent of the defendant for a policy of insurance for $5,000 on his life. He was examined on the thirty-first day of December by Dr. Foster, who was employed by the defendant's agent as medical examiner, and a policy was written by the defendant, dated on the 6th day of January, 1894. Mr. Will died in March, 1894, and after proofs of loss had been made

as required by the policy, and the defendant had refused to pay, this action was brought to recover the amount which was claimed to be due upon it. The single question presented at the trial was whether in fact there had been such a delivery of the policy as made it a valid and existing instrument upon which the defendant was bound. It was alleged by the plaintiff that an agreement had been made between Haynes, the agent of the defendant, and Will, the assured, by which the payment of the premium had been waived and that the policy was absolutely delivered without payment of the premium early in January, 1894. It was claimed by the defendant, on the other hand, that there never had been an absolute delivery of the policy, but that it was delivered to Will and received by him solely for purposes of examination, and that it never became an actual existing policy upon which the defendant was bound. This was the question upon which the parties went to trial. The defendant at every stage of the case when it was proper to do so, claimed that the policy had never been effectually delivered, and took such exceptions to the ruling of the court upon that subject as were necessary to enable him to raise the question here. The question, however, was submitted to the jury by the court as a question of fact, and the finding was for the plaintiff. In submitting this question to the jury as a question of fact we think the court erred, because the undisputed facts showed that the policy was delivered conditionally, and there was nothing from which the jury could infer that that delivery ever became absolute.

The plaintiff, in the first instance, put upon the stand Dr. Foster, who had examined Will in behalf of the company, and who, it appeared, had also made many other examinations for the defendant upon the employment of the same agent who wrote this policy. By thus putting Dr. Foster upon the stand the plaintiff certified him to the jury as a credible witness, whose testimony was to be relied upon so far as it was not contradicted. (*Becker* v. *Koch*, 104 N. Y. 394, 401; Whart. on Ev. § 549.) She was at liberty to contradict his testimony or to show that the facts were other than as he stated them to be, but unless she did that she was not at liberty to say that a fact stated by him, which was not contradicted by anybody, should not be assumed as an existing fact for the purposes of the case.

The time when the policy was delivered was disputed.   Mrs. Rey, the plaintiff, testified that it was in the early part of January, 1894. The precise day she did not attempt to give, but she was positive that it was in the early part of January.   Other witnesses sworn by the plaintiff testified that they saw this policy in the possession of Will before his death, and while one or two of them thought that they saw it in the month of January, none of them were able to testify to the exact time.   Their evidence, therefore, does not aid us in ascertaining just when the policy was delivered, but it must be assumed that it was done some time in January, 1894, and in the early part of that month.

When Dr. Foster was upon the stand there was presented to him a paper purporting to be signed by Will, and dated on the 12th day of February, 1894.   That paper read as follows:

"Received from A. C. Haynes, manager, Policy No. 677,804 for $5,000 on my life in the Equitable Assurance Society, said policy held for examination and not in force, as no premium has been paid.

"(Signed)    J. A. WILL.

"Witness: GEORGE V. FOSTER, *February 12th*, 1894."

Dr. Foster testified positively that he saw Mr. Will sign that paper at its date, and that at the same time he signed it as witness and put the date upon it.

It was not disputed that the signature was in the handwriting of Will.   Mrs. Rey, who was subsequently put upon the stand, did not attempt to dispute that fact, and it is evident from an inspection of the original papers in the case that the handwriting upon the receipt is the same as the handwriting of the signature to the application. It must be assumed, therefore, for the purposes of the case, that this paper signed by Will was actually delivered to the defendant. There is some uncertainty or dispute as to whether it was delivered at the time when the policy was delivered.   Mrs. Rey testified that the policy was delivered to her husband Will by Dr. Foster. This Dr. Foster denied.   He said positively that he never had the policy in his possession at any time, and that he did not deliver it to Will.   Haynes, the agent, testified, as did Foster also, that the policy was delivered to Will by Haynes on the day of the date of the receipt, and that the receipt was given to Haynes at the same

time.   Mrs. Rey was asked whether any receipt was given at the time the policy was delivered to her husband, and she was able to say that she saw nothing of the sort.   Evidently that was all that she could say in the nature of things.   But it may be assumed that the receipt was not delivered at the time that the policy was received by Will, but that Will delivered it subsequently to the defendant's agent.

We would then have this condition of affairs upon the facts which must be taken as established :   That some time in the early part of January, 1894, Will received from the defendant's agent this policy of insurance ; that later he delivered to the agent a receipt in which he said that the policy was held for examination and not in force, and there is no evidence tending to show any agreement on the part of Will with regard to the manner in which he held this policy except this paper, the execution of which is not disputed.   What is the legal conclusion to be drawn from these undisputed facts?   In our judgment it is that the paper represents the contract between the parties under which the policy was delivered, and so long as that paper is not impeached, that there was no complete delivery of this policy so that it should take effect as a binding instrument.

If it had been made to appear that the policy and the paper were delivered at the same time, no one would dispute that the two papers together had the effect claimed for them by the defendant.   But although this paper was not shown to have been delivered contemporaneously with the policy, and, therefore, it cannot be said to be, as a matter of law, an essential part of the whole transaction, it has another effect, which with the facts which are not disputed make it decisive in this case.   There is no evidence on the part of the plaintiff's intestate to show that the transaction was not precisely what the defendants say that it was.   There was no evidence in the case as to whether this policy was issued absolutely to Will or not, except so far as the testimony of Mrs. Rey may bear upon that point.   She testified that it was handed to her husband by Dr. Foster, who said at the time that he had got a policy very cheap, or something like that.   But that testimony does not tend in any way to show an absolute delivery to Will.   The nature of the transaction was still left to be determined by all that was said and done by the parties to it in relation to the whole matter.

This receipt, as it is called, was undoubtedly a thing done by Will in regard to the delivery of this policy, and the statements in it must be regarded as his statement of the manner in which he received it. If what is stated in this receipt had been said at the time that the policy was delivered, although it had not been in writing, no one would doubt that the delivery was conditional. The statement of Will in the paper has the same effect as an oral admission that the policy had been received by him conditionally and not absolutely. This is not disputed. If the evidence had been given by an interested witness and had stood upon the mere recollection of such a witness, it might well be that the case should have been submitted to the jury, but there was no uncertainty about it. The writing was not ambiguous; it was not disputed that it was made and delivered, and the defendant is entitled to all the benefit which an undisputed admission of an uncontradicted fact affords. The whole transaction, taken together, then, is that this policy was delivered in the early part of January by Dr. Foster to Will; that he afterwards gave back a paper stating that the delivery was conditional and not absolute, and the execution and delivery of this paper is not disputed. We think the necessary result of these undisputed facts was to show that there was no complete delivery of the policy, and that the motion by the defendant to dismiss the complaint upon that ground should have been granted.

For this reason the judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., BARRETT, O'BRIEN and INGRAHAM, JJ., concurred.


INGRAHAM, J. (concurring):

I concur in the reversal of this judgment. The plaintiff's intestate, on the 30th of December, 1893, signed an application for a policy of life insurance, and agreed " that the application and the policy hereby applied for, taken together, shall constitute the entire contract between the parties hereto; * * * that this contract shall not take effect until the first premium shall have been paid during my good health, and that the distribution of surplus which may be adopted and approved by the society is hereby accepted by

me in my own behalf, and for every person who shall have any interest in the policy now applied for." Upon this application the defendant issued a policy which recited that, " In consideration of the written and printed application for this policy, which is hereby made a part of this contract, and of the payment in advance of one hundred and thirty-eight dollars and forty-five cents, and of the semiannual payment of one hundred and thirty-eight dollars and forty-five cents, to be made thereafter at the office of the society in the city of New York, on or before the first day of June and December in every year, during the continuance of this contract," the defendant promised to pay to John A. Will, his executors, administrators or assigns, $5,000 upon satisfactory proof of the death of said Will. This policy contained the following notice : " This policy and the application therefor, taken together, constitute the entire contract, which cannot be varied except in writing by one of the executive officers printed above." The policy was delivered to the defendant but no premium was ever paid by Will or received by the defendant, the plaintiff claiming that the payment in advance of $138.45 was waived.

The complaint alleges that " if said first premium has not been paid, payment thereof has been duly waived by the defendant, or has been waived in such a manner by defendant that the nonpayment of said first premium, if there was such a non-payment, would not in any way affect or modify the said contract of insurance." Upon the trial it was conceded that this first payment had not been paid, and the evidence to prove the waiver consisted of statements made by one Dr. Foster, who was a medical examiner for the company, and who, it was alleged, was an agent of the company. Dr. Foster asked Will to take out the policy, and, upon Will's saying that he did not want to because he had already made an application to another company for insurance, Foster said : " If you take that policy my friend will not charge you the first premium." Then Will wondered about the present that would be made to him, and Foster said to him that it was very simple; that the agent had a big commission, and he could well afford it; and Will said, "All right, I will take the policy," and he took it. This was the testimony of the present husband of the plaintiff who was the widow of Will. The plaintiff, being examined, also testified

that she was present at the interview; that Dr. Foster "told my husband to take a policy for such an amount — for $5,000 — and that he would not have to pay the first premium." This testimony was corroborated by another witness who was present, and who says that he heard Dr. Foster say "half a year's premium for nothing." The evidence sought to sustain the allegation of a waiver of the payment of the first premium was not that the *prepayment* was waived, but that any payment by the assured was waived — in effect, a contract between the company and the assured, by which the company agreed to pay to the assured or his executors, administrators or assigns the sum of $5,000 upon his death without any obligation upon the assured to pay anything, or without there being any consideration for the promise of the company.

I do not understand that contracts of life insurance are exempt from the operation of the general rule that all contracts require a consideration before they can become binding. An agreement by this insurance company to pay to Will $5,000 upon his death, without any consideration for the promise, would be as incapable of enforcement as a contract to pay a sum of money during Will's life where there was no consideration for the promise. Upon this evidence, as it stands, it seems to me clear that there was no consideration for the promise contained in the policy. Neither the policy nor the application contained any obligation on behalf of Will to pay this company any sum of money. The consideration stated in the policy is the prepayment by Will of a sum of money and of subsequent payments semi-annually of like sums during the continuance of the contract; but, until the contract had a legal inception based upon some valid consideration, it seems to me quite clear that no valid contract was made. The contract itself never became binding, and no obligation under it was imposed upon the defendant.

It has been quite frequently held that in the case of a contract of this kind, which requires the prepayment of a sum of money as a premium upon a policy, the prepayment of the premium may be waived either by an express agreement or by acts from which the court can imply such an agreement; but such an agreement, I think, must be an agreement to waive the prepayment of the premium so as to substitute for such prepayment an obligation of some one to pay

such premium in the future, and not an agreement that no premium at all should be paid by any one.

Thus, in the case of *Trustees of the First Baptist Church* v. *Brooklyn Fire Ins. Co.* (19 N. Y. 305) the rule is stated as follows: " In any subsequent agreement for a renewal or continuation of the risk, it was competent for the parties to contract by parol, and to waive the payment in cash of the premium, substituting therefor a promise to pay on demand or at a future day.  Proof of such an agreement would have no tendency to contradict or to change the written policy already in force between the parties, and which would be wholly spent before the new agreement could take its place." In the case of *Bodine* v. *Exchange Fire Ins. Co.* (51 N. Y. 121) the same rule was applied, the court saying : " Notwithstanding the condition in the original policy, that no insurance, whether original or continued, should be considered binding until the actual payment of the premium, it was still competent for the insurance company to disregard this condition, and upon any renewal of the policy to waive by parol the payment in cash of the premium, and this waiver of payment could be shown by direct proof that credit was given, or could be inferred from circumstances, and the waiver could be by the company or any of its authorized agents.   *   *   *   An insurance agent can authorize his clerk to contract for risks, to deliver policies, to collect premiums and to take payment of premiums in cash or securities, and to give credit for premiums, or to demand cash ; " and the court held that in that case there was some evidence tending to show that the plaintiff accepted the certificate, and that it was arranged that Whelp, the agent, should hold it for them until a future day, when they would pay the premium.

In *Wood* v. *Poughkeepsie Ins. Co.* (32 N. Y. 620) the same principle was applied, the court saying : " Boggs was a general agent of the company.  If he had waived the condition of prepayment, the insurers would have been bound by his act, though it was in violation of their private instructions.  The law would have implied such waiver if the policy had been delivered by the agent without requiring payment of the premium, and had been accepted by the plaintiff as a complete and executed contract.  The company would have been held to its engagement *and the assured*

*would have been liable for the premium,* notwithstanding the acknowledgment of payment on the face of the paper." But it was held in that case that there was no such waiver. The policy was left with the plaintiff's clerk on condition that when the plaintiff came to town the premium should be paid if he accepted them, or the policies returned if he declined them. When Wood came he did neither, and when either the premium or the return of the policy was demanded, he said he would call and see the agent in reference to a loss he had sustained on other property, as to which he made some complaint; and it was held that, by such a delivery, the company waived nothing, for even if the instrument be regarded as operative, it contained a stipulation that, until the payment of the premium, the insurers should not be bound by their undertaking; and, although there was a dissent from this decision, it was upon the ground that the act of the parties must be considered as a waiver of the obligation of prepayment, and that the liability of Wood to pay the premium was substituted for the actual prepayment in cash.

In *Boehen* v. *Williamsburgh Ins. Co.* (35 N. Y. 134) the same principle was applied where " the evidence, taken together, leaves but little doubt that the certificate was delivered to the plaintiff's agent without exacting *prepayment* of the premium, with an understanding that it was to be paid on demand, or when the question of an additional insurance was settled by the company." In none of the cases cited by counsel for the plaintiff was it ever held that a contract could be valid without either the prepayment of a consideration or a promise to pay a consideration in the future. Here it is conceded that the defendant never did receive any premium for this policy; nor did the assured or any one else ever agree to pay a premium to the defendant. On the contrary, the policy was delivered to the assured, which, upon its face, expressly provided that the contract should not take effect until the first premium should have been paid, under an express understanding that no premium was to be paid at all. The consideration expressed in the policy was the payment in advance of $138.45. The evidence was uncontradicted that that sum of money was not paid, and that no sum was paid to the company. If there was any other consideration than that named in the instrument itself, it was incumbent upon the

plaintiff, or the party claiming under it, to establish such other consideration. Such consideration must be some benefit moving to the obligor, or some injury to or obligation assumed by the obligee. There is absolutely no evidence to show any fact from which such a consideration, other than that expressed in the instrument itself, existed, and it affirmatively appears that the consideration therein expressed was not actually given or promised.

In the case of *Fargis* v. *Walton* (107 N. Y. 400) it was expressly held that where it is shown that the consideration mentioned in an instrument not under seal was not actually given or promised, the instrument is void and cannot be enforced ; that where a party to it claims that there was some other consideration, it is incumbent upon him to show it, and that upon failure to show such other consideration, the agreement was invalid and could not be enforced.

In the case of *Presbyterian Church of Albany* v. *Cooper* (112 N. Y. 520) the necessity of a consideration for an agreement to pay money was enforced, and it was there held that, " It is, of course, unquestionable that no action can be maintained to enforce a gratuitous promise, however worthy the object intended to be promoted. The performance of such a promise rests wholly on the will of the person making it. He can refuse to perform, and his legal right to do so cannot be disputed, although his refusal may disappoint reasonable expectations, or may not be justified in the forum of conscience." (See, also, *Purdy* v. *R., W. & O. R. R. Company,* 125 N. Y. 213.)

I think it clear, therefore, that upon the evidence of the plaintiff, there being no consideration paid nor promise to pay to the defendant, either by the plaintiff or by any one on his behalf, there was no consideration for the promise made by the defendant to pay to the plaintiff's intestate the sum of $5,000 upon his death, and that for that reason the complaint should have been dismissed.

I concur also in Judge RUMSEY'S opinion for a reversal of the judgment upon the ground stated by him.

Judgment and order reversed, new trial granted, costs to appellant to abide event.