FRANCIS J. BRAUN, Respondent-Appellant, v NEW YORK LIFE INSURANCE COMPANY et al., Appellants-Respondents.

Fourth Department, December 17, 1976

*Evans, Severn, Bankert & Peet (Robert J. Lutz* of counsel), for appellants-respondents.

*Grover W. Radley, Jr.,* for respondent-appellant.

GOLDMAN, J. In this action plaintiff Francis J. Braun seeks to recover the proceeds of a life insurance policy issued by defendant New York Life Insurance Company (Company) and allegedly sold by its agent and representative, defendant Geoffrey E. Parker, to Michael F. Braun, the now-deceased son of the plaintiff. The parties cross-appeal from an order which denied their respective motions for summary judgment.

At the time of his death, 23-year-old Michael F. Braun was in his final year of study at Rensselaer Polytechnic Institute in Troy, New York. He resided in an apartment in Schenectady. On June 9, 1972, Michael was killed in an automobile accident. Thereafter a $25,000 life insurance policy, written by the defendant Company and naming plaintiff as first beneficiary, was found in Michael's room among his personal effects. The policy recited that it was "executed as of April 21, 1972, which is its date of issue". Attached to the policy was an application which contained, in the paragraph immediately above Michael's signature, the provision that "no policy applied for herein shall go into force or take effect unless and

until it is delivered to the Applicant and the first premium for it is paid in full during the lifetime of the person or persons proposed for coverage under it". Plaintiff furnished the company with proof of his son's death and sought payment of the proceeds. The Company refused to make payment on grounds that the policy never became effective because no premium was ever paid. Plaintiff thereafter commenced the instant action.

The complaint alleged six causes of action, which in somewhat overlapping and redundant fashion set forth the following alternative theories: (1) that Michael had paid the premium during his life; (2) that he made part payment and that the defendants waived the policy's provisions as to the time for payment of the rest; (3) that defendants waived prepayment of all or part of the premium by issuing and delivering the policy prior to such payment, and extended credit to Michael, which they are now estopped to cancel, for a term which did not expire prior to his death; (4) that defendants extended credit to Michael until such time as they might demand payment or return of the policy, which they never did, and that Michael, relying upon their representations that the policy was in effect, refrained from buying other insurance, so that defendants are now estopped to cancel or rescind the insurance contract; (5) that defendant Parker received payment of the premium from Michael and negligently or intentionally failed to forward the payment to the Company. All allegations of payment and of dealings between Michael and the defendants were upon information and belief. Plaintiff's bill of particulars, and no fewer than three amended bills, also upon information and belief, add little detail to those allegations, for they consist largely of denials that plaintiff had knowledge of the requested particulars.

The answer denied all allegations that payments were made, waived or postponed, and alleged as an affirmative defense that defendant Parker left the policy with Michael solely for inspection purposes under the terms of a "policy inspection receipt", and that Michael failed to make the first premium payment so that the policy never became effective. A copy of the inspection receipt, dated April 21, 1972 and bearing what purports to be the signature of Michael Braun, was annexed to the answer. The receipt contained, *inter alia,* the following language:

"I hereby acknowledge and agree

"(1) that I have *not* paid the full first premium on the policy * * *

"(2) that the policy has been left with me *temporarily and solely for inspection purposes* * * *

"(3) that the Company shall incur no liability under the policy unless and until the full first premium thereon is paid * * *

"(5) that I will return the policy to the Company upon demand by it at any time prior to payment of the full first premium." (Italics in original.)

Also before Special Term upon the cross motions for summary judgment was the transcript of an examination before trial at which three witnesses testified. The first was defendant Geoffrey E. Parker, who stated that he talked with Michael Braun about life insurance on March 23, 1972, at which time Parker filled out the policy application. The meeting took place at Michael's apartment with no other persons present. The premium was discussed, and Michael said that "He couldn't pay it at that time". Parker saw Michael read and sign the application. Parker later received the policy from the Company, and he took it to Michael's apartment on April 21, 1972, at which time he and Michael, with no others present, reviewed the policy's provisions. Parker asked Michael "if he wanted to take the policy, put it in force, or inspect it", and Michael answered that he wanted to inspect it. Parker had Michael sign the policy inspection receipt, which Parker took and kept in his file. Parker explained to Michael that the Company would incur no liability under the policy until the first premium was paid in full. Afterward Parker had several telephone conversations with Michael, and once, in early June, 1972, Parker called on Michael at his apartment and asked him "if he wanted to take the policy", and Michael replied "that he had a job coming up in a week, that he would be in a better position then than right at that moment". Parker stated that he never sent Michael a bill for the premium and he did not recall asking for the return of the policy; that he never at any time received any payment from Michael. Parker testified that he was authorized to collect the first premium when a new policy was sold, but that bills for subsequent premiums were mailed by the Company. It was Parker's practice, when collecting a premium, to remit the payment to the Company in the form in which he received it

from the client. Parker did not make such payments to the Company through any checking account of his own.

Richard C. Leonard, assistant vice-president in the life underwriting department of the defendant Company, also testified at the examination before trial. He stated that he did not know whether the local branch office of the Company had ever billed Michael Braun, but that the home office computer files indicated that the policy issued to Michael Braun was "not taken" and "not paid for". Leonard indicated that policy inspection receipts were in routine use by his Company and had been for many years.

The plaintiff also testified at the examination before trial. He stated, with commendable frankness, that the sole source of his information that payment had been made on the policy was a telephone conversation between his wife and Michael, which plaintiff had partly overheard and which his wife had related to him. In plaintiff's words, "a week previous to [Michael's] death, my wife called him and spoke to him. I was at the kitchen table at the time, and I overheard the conversation to the respect that one of his friends was trying to sell him insurance, and Mike said that it all had been taken care of. And she also stated that if he needed any help, we would give him a hand with the payments, and Michael said it had already been taken care of and that's the only thing I know about the policy". Plaintiff did not dispute the authenticity of Michael's signature on the policy inspection receipt. He stated that nothing had been found in the records of Michael's checking account or in his other personal papers that would indicate that any payment of the policy premium had been made. When questioned about certain allegations in the bills of particulars, plaintiff indicated that he had no knowledge of any transaction, conversation or representation between Michael and the defendants, other than what he "assumed" from Michael's telephone conversation, and from the fact that the policy was delivered to Michael and left with him.

Upon the proofs outlined above, Special Term denied the cross motions for summary judgment, taking the view that there was a triable issue of fact as to whether Michael paid the premium. We disagree. First, it bears noting that the evidence directly relied upon by plaintiff to establish payment is a statement by Michael in a telephone conversation with his mother. That statement, if offered upon a trial to prove that payment had indeed "been taken care of", would be

virtually certain to provoke a hearsay objection from defendants, and we are aware of no exception to the hearsay rule which would render the statement admissible over such an objection. Furthermore, and apart from any question of hearsay, we are of the opinion that plaintiff has failed to make a sufficient factual showing to defeat defendants' motion for summary judgment. Upon such a motion for summary judgment, "It is * * * incumbent upon a moving party to present evidentiary facts clearly showing the validity of his cause of action and that, as a matter of law, a defense cannot be sustained. Conversely, the opponent of a motion for summary judgment must present facts having probative value sufficient to demonstrate an unresolved material issue which can be determined only at a plenary trial" (4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.05c). Here the defendants have made a strong evidentiary showing in support of their affirmative defense that the policy was delivered to Michael for inspection purposes only and that he did not pay the first premium. The signed application, which was attached to the policy, became a part thereof by the terms of the policy and in accordance with statute (Insurance Law, § 142, subd 1). The application expressly made prepayment of the first premium a condition precedent to the effectiveness of the insurance contract (*Russell v Prudential Ins. Co.,* 176 NY 178, 188-189; *Reznikoff v Equitable Life Assur. Soc. of U.S.,* 267 App Div 785, 786, affd 294 NY 935; cf. *Corning v Prudential Ins. Co.,* 248 App Div 187, affd 273 NY 668). That condition, according to Parker's testimony and the Company's records, was never met. Moreover, the policy inspection receipt, bearing Michael's signature and reciting that the policy was left with Michael "temporarily and solely for inspection purposes", tends powerfully to rebut any inference that Michael paid for the policy from the fact that he possessed it. The inspection receipt also is direct proof that the parties understood that the policy was not to be effective upon delivery. An agreement specifying conditions upon which a policy is to become effective may be used to establish that the policy was delivered conditionally (*Harnickell v New York Life Ins. Co.,* 111 NY 390), and it has been held that a policy inspection receipt similar to the present one "represents the contract between the parties under which the policy was delivered" and, if unimpeached, conclusively establishes "that there was no complete delivery of [the] policy so that it should take effect as a binding instrument" (*Rey v Equitable Life Assur. Soc. of U.S.,* 16 App Div 194, 197; see, also, 29 NY Jur, Insurance, § 574).

Nor do we agree with plaintiff's contention that subdivision 1 of section 142 of the Insurance Law bars the court from considering the policy inspection receipt because it was not attached to the policy. It is true that this section forbids incorporation by reference of any writing into a policy of life insurance "unless a copy thereof is endorsed upon or attached to the policy". The principal abuse which the statute aimed to correct was the avoidance of liability by an insurer on the basis of false statements in an application which, because not embodied in the policy, could not easily be discovered and corrected by the insured *(Abbott v Prudential Ins. Co.,* 281 NY 375, 382; cf. *Massachusetts Mut. Life Ins. Co. v Lord,* 18 AD2d 69, 71, affd 13 NY2d 1096). Thus, such an unincorporated writing is deemed to form no part of the insurance contract (281 NY, at p 379). However, the statute does not bar a court from considering an extrinsic writing upon an issue dehors the contract, such as, for example, whether the insured had knowledge that the company's agent lacked power to waive a "delivery in good health" condition in the policy (pp 383-385). Here the policy inspection receipt is not relied upon to vary or contradict the provisions of the insurance contract, but rather to prove an extrinsic and collateral agreement as to the conditions under which Michael Braun took physical possession of the policy. For this purpose, the inspection receipt is manifestly relevant and may be considered without offending subdivision 1 of section 142 of the Insurance Law.

Defendants having made a prima facie showing of a good defense, it became mandatory upon plaintiff to adduce evidentiary facts rebutting that showing and demonstrating the existence of a triable issue of fact *(Indig v Finkelstein,* 23 NY2d 728, 729). This, we think, plaintiff has failed to do. Opposing proofs are insufficient to defeat a motion for summary judgment when they merely consist of "conclusory allegations in the nature of surmise, conjecture and suspicion" *(Golding v Weissman,* 35 AD2d 941, app dsmd 29 NY2d 913; *Blake v Gardino,* 35 AD2d 1022, affd 29 NY2d 876). Yet there is little in plaintiff's proofs that is not wholly conjectural. Indeed, plaintiff's allegations appear to rest upon only two evidentiary facts: (1) that the policy was left in Michael's possession and remained there until his death some one and one-half months later; and (2) that Michael stated that "it had already been taken care of" when his parents offered to help

him with the payments. In light of the plain language of the policy inspection receipt, the fact that the policy was left in Michael's possession cannot be the basis of any inference that the premium was paid, waived or postponed by an extension of credit, and any such inference based upon the finding of the policy among Michael's papers one and one-half months later would be entirely speculative. While statements made by Michael in the telephone conversation could be interpreted to mean that he had paid the premium or made plans to pay it later, the statements were, we think, too equivocal to permit an inference that payment was made or the prepayment condition waived.

*Stewart v Union Mut. Life Ins. Co.* (155 NY 257), upon which plaintiff relies, is distinguishable, for there a writing by an agent of the insurance company was in evidence which showed that a promissory note made by the insured was accepted by the company "in settlement" of the first premium (p 266). The present record, in contrast, lacks written evidence that Michael made payment or incurred a binding obligation to make payment.

Finally, we reject plaintiff's argument that the defendants are barred by section 151 of the Insurance Law from asserting that the policy issued to Michael was not in force. That section provides, in part, that no life insurance policy "shall terminate or lapse by reason of default in payment of any premium" unless written notice is first mailed to the insured. That section, we believe, can apply only where a policy has been in force, and not where a policy has never become effective due to failure of condition precedent by nonpayment of an initial premium, for in the latter case it cannot be said that the policy has terminated or lapsed because of the nonpayment.

Accordingly, defendants' motion for summary judgment dismissing the complaint should have been granted.

MARSH, P. J., CARDAMONE, MAHONEY and DILLON, JJ., concur.

Order unanimously reversed, on the law without costs, defendants' motion for summary judgment granted and complaint dismissed.