OPINION OF THE COURT

Per Curiam.

Order, entered October 12, 1979 (Sinclair, J.), modified to the extent of reversing so much thereof as denied plaintiff’s motion to dismiss defendant’s counterclaim, and, as so modified, affirmed without costs.
Plaintiff engaged an architect and interior decorator to renovate his co-operative apartment. Defendant, John Massa, the sole principal of the corporate defendant, Professional Acoustics, Ltd. (Acoustics), entered into an agreement with the plaintiff’s architect on September 8, 1976, to perform certain structural repairs for an agreed price of $4,700, subsequently reduced to $4,500, of which $3,000 has been paid by the plaintiff, Mark Zimmett. The record also includes 14 "Extra Work Orders” submitted to the plaintiff between October 7 and November 23, 1976, each providing for an additional charge, ranging from $75 to $500.
On February 28, 1977, plaintiff brought this action against defendants for breach of contract alleging damages of $4,385, "representing the expense of engaging other tradesmen to complete the renovations which Acoustics had agreed to perform and the loss of use and enjoyment of his residence.” Additional damages of $229.55 were alleged for damage to the plumbing by defendant.
Defendants specifically denied the allegations in the complaint, and defendant Acoustics counterclaimed for the balance remaining due and owing on the September 8, 1976 agreement in the sum of $1,500, and for the reasonable value of the extra work and services performed in the sum of $2,875, or a total of $4,375.
In a reply to plaintiff’s demand for discovery and inspection of documents of June 13, 1977, defendants, on November 8, 1977, alleged that they did not possess a license pursuant to *973 section B32-350.0 of the Administrative Code of the City of New York and that such requirement was not relevant.
On May 25, 1979, plaintiff moved for an order pursuant to CPLR 3211 (subd [a], pars 5, 6) and 3212 (subd [e]), dismissing and severing the counterclaims.
In an order dated June 7, 1979 (Sinclair, J.) denied that branch of the motion which claimed there can be no recovery for defendants’ unlicensed performance (concluding that recovery might be had on the basis of quantum meruit), but granted the motion dismissing the counterclaims on the ground that plaintiff had paid $3,000 for material and labor totaling $2,975, "pursuant to contract and extras.” Defendants moved to reargue and renew the motion alleging that the court had misconstrued certain supplemental answers to plaintiff’s interrogatories.
Defendants’ motion for reargument was granted, and upon reargument the court substituted for its July 18, 1979 order (which had dismissed defendants’ counterclaim upon the ground that the compensation paid by the plaintiff to the defendants had exceeded the value of the contract work and extras), an order denying plaintiff’s motion to dismiss defendants’ counterclaims. The court held "that there exists a sharp factual issue as to the nature of the work set forth in the defendants’ supplemental answers, that is whether such work is contract work or extras, and as to its value * * * a review of the papers submitted indicates that while some of the alleged extras are covered by the written contracts the remainder of the work appears to have been performed as extras, outside of the written contracts and upon oral authorizations given through November 23, 1976, subsequent to the date of the written contracts.”
Plaintiff appeals on the following points: (1) Defendant Acoustics is unlicensed as required by law and therefore may not maintain its counterclaim for money allegedly owing under the parties’ agreement; and (2) defendants have been paid more than the value of the work they claim to have done.
It is not disputed that defendant Acoustics is an unlicensed contractor within the ambit of article 43 of the Administrative Code. Subdivision (a) of section B32-352.0 provides: "No person shall solicit, canvass, sell, perform or obtain a home improvement contract as a contractor or salesman from an owner without a license therefor.”
Defendants contend, however, that they did not solicit this *974 contract from plaintiff, the owner of the premises, but contracted with the architect, an independent agency.
The licensing requirement itself as contained in subdivision (a) of section B32-352.0 of the Administrative Code is unequivocal. It seeks to regulate performance of home improvement contracts without reference to the relationship of the contracting parties. Subdivision 6 of section B32-351.0 of the Administrative Code, defines "Home improvement contract” as: "an agreement, whether oral or written, or contained in one or more documents, between a contractor, and an owner; or contractor and a tenant, regardless of the number of residence or dwelling units contained in the building in which the tenant resides, provided said work is to be performed in, to or upon the residence or dwelling unit of such tenant, for the performance of a home improvement and includes all labor, services and materials to be furnished and performed thereunder.” (Emphasis added.) Plaintiff as the owner/tenant of a cooperative apartment comes within the purview of subdivision (a) of section B32-352.0 and subdivision 6 of section B32-351.0.
In enacting article 42 entitled "Home Improvement Business” the city council defined its purpose to be "to safeguard and protect the homeowner against abuses and fraudulent practices by licensing persons engaged in the home improvement, remodeling and repair business” (§ B32-350.0). The legislative intent is an important consideration in determining whether a violation of the statute should render the contract void or merely mandate a penalty.
It is a general rule that a contract, though in violation of a statute, will not be declared invalid where it was not the intent of the Legislature to make it void. If the statute violated does not provide that contracts involving its coverage shall be void, the legislative intent must be ascertained from the statute as a whole (10 NY Jur, Contracts, § 124). Where the licensing statute is designed to protect the public against fraud, it has been held that failure to obtain the required license renders the contract unenforceable (Unger v Travel Arrangements, 25 AD2d 40; East Coast Moving & Stor. v Flappin, 78 Misc 2d 140). As that principle has been applied to unlicensed home improvement work in violation of local statutes, recovery on the contract or in quantum meruit was denied in Segrete v Zimmerman (67 AD2d 999), on the authority of Richards Conditioning Corp. v Oleet (21 NY2d 895). In Segrete, the contractor sued to recover the unpaid balance due *975 under a home improvement contract. In a counterclaim, the homeowners sought to recover the amount paid under the contract on account, claiming that the contractor’s unlicensed status rendered the contract void. In holding that the contractor may not recover in either contract or quantum meruit, the court held, however, that since the homeowners had the benefit of the contractor’s work, they are not entitled to recover payments which they had already made.
The stringent rule in Segrete rejects any consideration of whether defendant’s failure to procure the required license was a willful disregard of the statute, and/or whether any abuses or frauds in the performance of the contract have been established (cf. Gargano v Smith, 97 Misc 2d 535).
In George Piersa, Inc. v Rosenthal (72 AD2d 593), the court found a like Nassau County local law requiring licensing for home improvement contracts to be remedial so that strict compliance with its terms was required. The corporate plaintiff in that case was not licensed to conduct a home improvement business. Although its president was so licensed, the court, nevertheless, denied the plaintiff the right to foreclose a mechanic’s lien holding that plaintiff could not recover either in contract or quantum meruit, citing Segrete v Zimmerman (67 AD2d 999, supra), and the mere fact that plaintiff’s president held a valid license should not alter the result.
Following the authority of Segrete v Zimmerman (supra), as we do, we conclude that the defendants’ counterclaim must be dismissed. Any resolution of the factual issues referred to in the court’s substituted decision dated October 9, 1979 will serve no purpose, where defendant can make no legal claim to either the balance of $1,500 due on the contract of September 8, 1976, or for the additional labor and materials furnished subsequent thereto pursuant to "Extra Work Orders” negotiated with the plaintiff Zimmett.
Defendant’s argument that it was not required to be licensed for performance of the contract in question because of its status as subcontractor is unpersuasive. In advancing the theory that defendant performed home improvements under the supervision and control of a general contractor, the architect and/or the owner Zimmett, defendant attempts to frustrate the intent and purpose of the statute and to contradict its express provisions. The statute makes no distinction between general and subcontractors. Its provisions are specifically intended "to protect the home owner against abuses and *976 fraudulent practices by licensing persons engaged in the home improvement, remodeling and repair business” (Administrative Code, § B32-350.0). If subcontractors were not required to comply with its provisions, claiming exemption by reason of an architect’s or general contractor’s license, the statute would be emasculated.
Concur: Dudley, P. J., Hughes and Tierney, JJ.