OPINION OF THE COURT
Charles H. Cohen, J.
THE QUESTION
While an unlicensed home improvement contractor may not recover on his contract or in quantum meruit, this case poses the question, hitherto unanswered in the reported cases, as to whether one who purchases an obligation arising out of home improvement work performed in the City of New York by such an unlicensed contractor may recover against the homeowner.
THE MOTION
In this action brought by the purchaser to foreclose a mortgage given as security for such an obligation, defendant Olga Valle has made a motion for partial summary judgment pursuant to CPLR 3212. It is based upon her position that since that obligation arose out of home im *535 provement work performed by an unlicensed home improvement contractor, plaintiff cannot prevail (see Administrative Code of City of New York, art 42, § B32-350.0 et seq.). (Defendant seeks only “partial” summary judgment since she reserves for further consideration the counterclaims asserted in her answer.) While defendant asserts various defenses and, indeed, denies that she knowingly signed a contract at all, for the purposes of this motion, the court will assume that she did knowingly sign a contract for performance of certain home improvement work.
Plaintiff does not dispute the fact that the underlying obligation upon which it seeks to recover arose out of home improvement work performed within the City of New York pursuant to a contract dated October 16, 1979 between Ramon Valle and Olga Valle as buyers and “Home Improvement Center, Inc.” as “contractor” and “seller”. Plaintiff agrees that an unlicensed home. improvement contractor cannot recover on his contract or in quantum meruit against the homeowner (see Matter of Schwartz [American Swim Pools, Div. of Urban-Suburban Recreation], 74 AD2d 638; George Piersa, Inc. v Rosenthal, 72 AD2d 593; Segrete v Zimmerman, 67 AD2d 999; Zimmett v Professional Acoustics, 103 Misc 2d 971; Anton Sattler, Inc. v Cummings, 103 Misc 2d 4; Lindner Appraisal Corp. v Frewil Corp., 72 Misc 2d 1041; Buffoleno v Denning, 82 Misc 2d 472; Vegliack v Mazzella, 73 Misc 2d 90).
However, plaintiff questions whether the contractor was unlicensed and claims that there is a question of fact on this point. Plaintiff further takes the position that even if the contractor were unlicensed, since this is not an action by the contractor but by “a licensed sales finance company which purchased a Retail Installment Obligation secured by a mortgage pursuant to Article 10 of the Personal Property Law,” plaintiff is entitled to recover.
WAS THE CONTRACTOR UNLICENSED?
Defendant has presented an affidavit from Karen Miller, the Director of the License Issuance Division, New York City Department of Consumer Affairs, who states that she has “custody of and control over the records of the License Issuance Division, including those records that pertain to applications for and issuance of home improvement con *536 tractor and salesman licenses pursuant to Article 42, § B32-352.0 of the Administrative Code of the City of New York.” She states that “a thorough examination of the defendant’s licensing records back to August 27, 1973 indicates that the Department has never issued a home improvement contractor’s license to a ‘Home Improvement Center, Inc.’”
With respect to the license, plaintiff states that the contract dated October 16,1979 “contains in the upper left hand corner a New York City license number 766743.” The copy submitted to the court contains no such number, but assuming that the original contract contained such a number, the placing of a purported license number on a form of contract does not mean that Home Improvement Center, Inc. was a licensed contractor. In any event, the affidavit of Karen Miller states that license No; 766743 was issued to “Beragus Home Improvement Center, Inc.” on November 28,1979. Thus, at the time of the signing of the contract — as well as at the time the work was completed in early November of 1979 — license No. 766743 had not even been issued. Moreover, when it was issued, it was not issued to “Home Improvement Center, Inc.”, the contractor named in the contract, but to “Beragus Home Improvement Center, Inc.” Even assuming that a claim were to be made that “Home Improvement Center, Inc.” was a trade name of “Beragus Home Improvement Center, Inc.”, there would not have been compliance with subdivision 8 of section B32-358.0 of the Administrative Code which prohibits conducting a home improvement business “in any name other than the one in which the contractor is licensed” (see, also, Administrative Code, ch 32, tit A, § 773-12.0).
The affidavit in opposition does not raise a triable issue as to whether the contractor was licensed. It merely states that license No. 766743 appears on the contract and then makes the conclusory statement that “there is apparently a question of fact arising as to whether or not license number 766743 was issued prior to November [and] * * * as to the identity of the party to whom it was issued.”
That the contractor was unlicensed has been demonstrated by the affidavit of Karen Miller, a public officer who has custody and control of the records of licenses (see *537 Administrative Code, art 42, § B32-366.0; cf. CPLR 4521). Under these circumstances, it is incumbent upon plaintiff to come forward with proof of contradictory evidentiary facts showing the existence of a genuine and substantial issue with respect to this matter (Rotuba Extruders v Ceppos, 46 NY2d 223, 231; Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., 32 NY2d 285, 290; Federal Deposit Ins. Corp. v A-Leet Commercial Servs., 70 AD2d 627). Opposing proofs are insufficient to raise an issue where, as here, they merely consist of conclusory allegations in the nature of surmise, conjecture and suspicion (Valenti v Purdy, 71 AD2d 1019; Braun v New York Life Ins. Co., 55 AD2d 99, affd 42 NY2d 1020). No copy of a license has been produced and no categorical statement has been made to the effect that the contractor was in fact licensed. No statement is even made that plaintiff attempted to get this information from the contractor but was unsuccessful. This is particularly significant in this case where the printed forms used by the contractor make reference to plaintiff as a possible assignee, thus indicating that plaintiff had been doing business with the contractor on a regular basis. No statement is made that plaintiff attempted to get information from the licensing authority but was unsuccessful. The records are public records open to plaintiff as well as to defendant. Thus, plaintiff cannot successfully claim that summary judgment should be denied because the facts regarding licensing are not available to it.
Plaintiff has produced nothing to contradict defendant’s prima facie proof that the contractor was unlicensed. Under these circumstances, there is no triable issue of fact concerning failure of the contractor to have the license required by law.
MAY THE PURCHASER RECOVER?
Having determined that the contractor was unlicensed, and there being no dispute on the law to the effect that an unlicensed contractor cannot recover against defendant on the home improvement obligation, the question remains as to whether plaintiff, a licensed sales finance company which purchased the obligation from the unlicensed contractor, may recover against defendant.
*538 Plaintiff argues that this is not an action “to enforce a contract by an unlicensed contractor, but one to foreclose a mortgage held by a licensee.” Plaintiff further argues that the licensing requirement “is to protect the public and to prevent the contractor from benefitting by his own wrongdoing. In this particular case, the contractor has been paid in full by the plaintiff.”
At the outset, it may be observed that the mere fact that plaintiff is seeking to foreclose a mortgage rather than bringing a direct action on the obligation it purchased is of no consequence. The mortgage is merely security for the obligation (Copp v Sands Point Marina, 17 NY2d 291, 293; Flyer v Sullivan, 284 App Div 697, 698). As stated in the mortgage upon which plaintiff is suing, “This is your mortgage agreement in connection with your Retail Installment Obligation [and] * * * is to secure your promise to pay for certain improvements to your property.” The security cannot exist independently of the obligation (Merritt v Bartholick, 36 NY 44, 45; Title Guar. & Trust Co. v Nessle, 163 Misc 577, 578), and if the obligation cannot be enforced, an action to foreclose the mortgage must fail.
This leads to the direct question as to whether one who purchases an obligation- arising out of home improvement work which cannot be enforced by the original obligee may be enforced by his purchaser. Plaintiff seems to be claiming that some sort of holder in due course doctrine exists in its favor.
In fact, no such doctrine is applicable here. Subdivision 4 of section 403 of the Personal Property Law specifically requires that “the assignee of a retail instalment contract or obligation shall be subject to all claims and defenses of the buyer against the seller arising from the sale”. As stated in Gramatan Home Investors Corp. v Lopez (46 NY2d 481, 487), this provision “was enacted to remove the frequently asserted holder in due course defense from the field of consumer credit sales.” Moreover, the retail installment obligation in this case specifically states:
“You may have claims against the Contractor or defenses against claims by the Contractor which arise from the improvements made under this agreement. If you do, *539 you can use those claims and defenses against Dartmouth or anyone else to whom this agreement is transferred. The following notice concerning claims and defenses is required by Federal Trade Commission rules:.
“notice: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF”
Further, as a matter of policy, plaintiff should not be permitted to recover on an obligation upon which the unlicensed contractor cannot recover. It would make little sense to preclude an unlicensed contractor from recovering but permit his assignee to recover. This would allow wholesale evasions of the licensing law. If the public is to be protected from unlicensed contractors, this protection must extend to those who acquire obligations from unlicensed contractors. That plaintiff has paid the unlicensed contractor in this case is immaterial. Plaintiff had the opportunity to make a simple inquiry in order to determine whether the contractor was licensed. Having failed to do so, any loss which plaintiff may sustain is a result of its own carelessness in failing to make this inquiry. Moreover, in this particular case, plaintiff is not a party who just happened to purchase this one obligation. As already noted, the printed form used by the unlicensed contractor indicates that it was contemplated that plaintiff would be the assignee of the contract. Thus, plaintiff here should have been particularly careful to assure itself that the contractor with whom it was doing business and from whom it was purchasing home improvement obligations was licensed (cf. Star Credit Corp. v Molina, 59 Misc 2d 290, 293-294).
The court also notes plaintiff’s argument that summary judgment should not be granted because defendants “may have conspired with the contractor to obtain funds from the plaintiff to be divided some way between them.” All that plaintiff submits in support of this argument is a statement in which defendant Olga Valle says that the contractor “paid some bills I owed and. gave me some cash. It amounts to $800.” Such speculation on the part of plaintiff cannot defeat this motion for summary judgment (Valenti v *540 Purdy, 71 AD2d 1019, supra; Braun v New York Life Ins. Co., 55 AD2d 99, affd 42 NY2d 1020, supra).
It is noted that if the contractor did give money to the defendant as an inducement to enter into the contract, the contractor would have violated article 42 (§ B32-358.0, subd 12) of the Administrative Code which prohibits such payment. Defendant should not be penalized for any wrongdoing on the part of the contractor. It must be emphasized that the opening section of the Administrative Code involved in this case states (art 42, § B32-350.0): “It is the purpose of the city council in enacting this article to safeguard and protect the home owner against abuses and fraudulent practices by licensing persons engaged in the home improvement, remodeling and repair business.”
This statute was enacted for the very purpose of protecting homeowners (Vegliack v Mazzella, 73 Misc 2d 90, 92). As already noted, case law has firmly determined that unlicensed home improvement contractors cannot recover on their contracts or even in quantum meruit, indicating a clear resolve to render unenforceable any obligations arising out of home improvement work performed by unlicensed contractors. No exception to this salutary rule should be made in favor of purchasers of such obligations based upon a claim that the homeowner, who was to be protected by the licensing requirement, was somehow at fault. The burden is on the purchaser to make sure that it is purchasing obligations of a home improvement contractor who is licensed.
CONCLUSION
The motion of defendant Olga Valle for partial summary judgment is granted.