■ COMMUNITY NATIONAL BANK AND TRUST COMPANY OF NEW YORK, Respondent, v DIANE M. MCCLAMMY, Appellant.— In an action to foreclose a mortgage, the defendant appeals from an order of the Supreme Court, Richmond County (Amann, J.), dated June 3, 1987, which granted the plaintiff's motion for summary judgment and which appointed a Referee.

Ordered that the order is reversed, with costs, the motion is denied, and the defendant's time to serve an answer is extended until 20 days after service upon her of a copy of this decision and order, with notice of entry.

This action had its genesis in a retail installment contract executed by the defendant in May 1978, whereby the plaintiff's predecessor in interest, Marshall Industries, was to perform certain home improvement work on the defendant's Staten Island residence. Marshall's representative came to the defendant's home and an agreement was reached to replace the defendant's rain gutters and leaders at a cost of $6,500 plus a finance charge of $3,796.72, to be paid in 84 monthly installments of $122.58. The work was allegedly orally guaranteed for 14 years. To secure the obligation, on June 22, 1978, the defendant executed a mortgage on her home. That same day, the contract was assigned to the plaintiff's immediate assignor, the Dartmouth Plan Inc., a sales finance corporation. The mortgagee too was the Dartmouth Plan. The following day, Dartmouth assigned the contract only to the plaintiff Community National Bank and Trust.

The defendant timely made 27 consecutive payments under the obligation. In October 1980, however, the defendant became dissatisfied with the quality of the work and she sought the warranted repairs. She wrote to Dartmouth, only to be informed that the work had been guaranteed only for 1 year, not 14, and further that Marshall Industries had gone out of business. No repairs would be forthcoming. The plaintiff bank could offer no help, either. Thoroughly frustrated by this time, the defendant made no further payments after December 1980. In January 1985, unbeknownst to the defendant, Dartmouth assigned the mortgage to the plaintiff bank. The defendant, still making no payments, heard nothing further for over five years until she was served with a summons and complaint in this action in February 1986.

In response to the plaintiff's action to foreclose, the defendant, rather than interposing an answer, asserted in a motion to dismiss pursuant to CPLR 3211 that the mortgage she signed was the product of a fraud perpetrated by the plain-

tiff's predecessor in interest, the contractor Marshall Industries. The defendant alleged that the document she signed was presented to her as a "sign off", i.e., an acknowledgment that to that point the work appeared to have been completed satisfactorily. She claimed she had never intended to execute a mortgage and indeed became aware of the instant mortgage only upon commencement of this action. The defendant's motion to dismiss was denied. On January 6, 1987, approximately two months after the denial, the plaintiff moved for summary judgment and the appointment of a Referee. This motion was granted, and an order of reference was entered June 3, 1987. The granting of the plaintiff's motion was error.

The evidence of the alleged fraud of the plaintiff's predecessor which was called to the attention of the Supreme Court by the defendant was insufficient to defeat the plaintiff's motion for summary judgment (see, Ferber v Sterndent Corp., 51 NY2d 782; Shaw v Time-Life Records, 38 NY2d 201, 207). However, based upon our examination of the record, we find that numerous genuine issues of material fact do exist which require the reversal of the order granting summary judgment to the plaintiff.

In support of the defendant's prior unsuccessful motion to dismiss, the defendant recounted her version of the fraud allegedly perpetrated upon her by Marshall's representative. This account raises doubts as to the propriety of the representation made by the plaintiff's predecessor. The contract signed by the defendant is admittedly a retail installment obligation secured by a mortgage on the defendant's primary residence. It is precisely this kind of transaction which comes within the purview of the Federal Truth in Lending Act (15 USC § 1601 et seq.). The purpose of this act, inter alia, is to ensure that consumers receive a meaningful disclosure of credit terms so as to be able to make a more informed decision in matters pertaining to the use of consumer credit (15 USC § 1601 [a]). In furtherance of this objective, section 1635 (a) provides that in consumer credit transactions in which a security interest is acquired in the principle residence of a consumer, the creditor shall disclose to the consumer specified information including that the obligor has the right for three days following the transaction to rescind the contract thereby terminating the performance obligations of both sides (see also, 12 CFR 226.9). The failure of a creditor to tender the requisite forms gives the consumer the right to rescind the transaction up to three years from the date the transaction is consummated (15 USC

§ 1635 [f]). Civil penalties may also be available (15 USC § 1640).

The provisions of the Truth in Lending Act have been incorporated into the laws of this State in various statutes, including section 402 of the Personal Property Law *(see,* Personal Property Law § 402 [3] [b] [1]; § 401 [1]). The courts of this State in construing these remedial statutes, have gone to great lengths to afford them a liberal interpretation so as to best effectuate congressional intent *(see, Lincoln First Bank v Rupert,* 60 AD2d 193). Accordingly, it has been held that the expiration of the statutory period for commencement of a Truth in Lending action will not bar the interposition of a counterclaim thereunder by a consumer where the counterclaim, as here, would arise out of the same transaction as that sued upon *(Public Loan Co. v Hyde,* 63 AD2d 193, *affd* 47 NY2d 182; CPLR 203 [c]). Similarly, issues regarding the disclosure of rescissionary rights exist under Personal Property Law article 10-A, the Door-to-Door Sales Protection Act, which has also incorporated the requirements of Truth in Lending. The failure of a door-to-door salesman to notify the consumer of the statutory three-day cooling-off period enables the consumer to cancel the contract thereafter within a reasonable time *(see, Hollywood Decorators v Lancet,* 118 Misc 2d 1096). This defense, if it is proven, would, pursuant to the contract executed herein, be available against the plaintiff bank as the successor in interest to Marshall Industries which solicited this contract in the defendant's home.

Finally, the record fails to indicate that Marshall Industries was indeed a licensed home improvement contractor. Under Administrative Code of the City of New York former § B32-350.0 *et seq.* (now Administrative Code § 20-385 *et seq.)* contractors who operate within the city must be licensed and an unlicensed contractor may not recover against a homeowner in default on a home improvement contract nor in quantum meruit *(Mortise v 55 Liberty Owners Corp.,* 102 AD2d 719, *affd* 63 NY2d 743; *Millington v Rapoport,* 98 AD2d 765). Indeed, the failure of a contractor to be licensed by the city has been held to be grounds for the defendant homeowner's award of summary judgment against the unlicensed contractor's assignee *(see, Dartmouth Plan v Valle,* 117 Misc 2d 534). In sum, the existence of the numerous genuine issues of material fact as outlined above shows that the award of summary judgment to the plaintiff was in error. Mangano, J. P., Brown, Rubin and Harwood, JJ., concur.