OPINION OF THE COURT
Mary Ann Brigantti-Hughes, J.
Plaintiff, an insurance company, seeks to recover damages *173 from defendant, a repairer of automobiles, for the wrongful withholding of a vehicle. Defendant counterclaims for foreclosure of a garage lien obtained pursuant to repairs performed on the automobile. Thus, the dispositive issue arising in this dispute is the validity of the garage lien, which depends on whether the exclusion of the benefits of the “Garage Keeper’s” Lien Law from unregistered repair shops should be extended to a registered repair car shop that performed car repairs pursuant to a contract assignment from a business not registered to perform such type of work.
Background
In a bench trial presided over by this Court, the following facts were adduced: in 1996, Toyota Motor Credit Company leased a 1994 Toyota Land Cruiser to Dr. Richard Geltman. The car was insured by Continental Insurance Company (Continental). On March 31, 1996, Dr. Geltman reported the 1994 Toyota stolen and the police recovered it on April 2, 1996. The next day, Jem Towing Company towed the 1994 Toyota to its Bronx location.
Jem Towing Company was not registered with the State to perform car repairs. Nevertheless, on April 3, 1996, it entered into a contract with Dr. Geltman for the repair of the 1994 Toyota. The contract specifically stated: “I, Richard Geltman authorize Jem Towing to have my 1994 Toyota Landcruiser repaired as per insurance estimate. Car will be restored back to new condition.” At the time, Continental had not sent a claim adjuster to view the car and prepare an “appraisal” of the cost of damages of the car.
On April 6, 1996, a “claim adjuster” for Continental went to Jem Towing’s Bronx location to examine the 1994 Toyota. The claim adjuster, however, was refused access to the car reportedly because the adjuster had not made a prior appointment for an examination of the car and because the location where the car was being held was not a registered auto repair station.
By the time Jem Towing Company allowed Continental access to the 1994 Toyota, it had assigned the contract to repair the car to Consumer Towing and Collision (Consumer), which was registered as a business to do such repairs. Specifically, on April 11, 1996, a claim adjuster for Continental was permitted to examine the 1994 Toyota and prepared a written report containing an estimated cost of repairs of $3,239. An owner of Consumer, however, claims that the claim adjuster verbally informed him that the estimated cost of repairs was $20,000.
*174 By the time the claim adjuster for Continental examined the car, Consumer had begun the repairs of the car. The claim adjuster observed that the car had been “stripped and parts were missing.” The adjuster complained about the “excessiveness” of the car repairs and warned Consumer that “the car will be declared a total loss” unless the repairs were scaled down. A few days later, Consumer discovered that Continental had carried out its warning; it declared the car a total loss, the owners had been paid a total of $35,000, and Continental received title to the 1994 Toyota.
Upon learning of Continental’s action, Consumer filed a “Garage Keeper’s Lien” against the 1994 Toyota for the repairs made on the car. At the time, Consumer had reportedly performed 90% of the necessary repairs to the Toyota at a cost of $19,000. When Continental asked Consumer to turn over the 1994 Toyota, it refused. Consumer demanded that its lien be satisfied, but Continental refused. Instead, Continental instituted the instant action to obtain possession of the car.
Discussion
While Continental claims that defendant wrongfully withholds possession of the 1994 Toyota, Consumer counterclaims that it has a superior interest in the automobile because it has a “Garage Keeper’s Lien” based on repairs made on the automobile with the alleged consent of the owner. Thus, the dispositive issue that this Court must answer is the validity of the “Garage Keeper’s Lien.”
Commonly known as a “Garage Keeper’s Lien,” Lien Law § 184 (1) provides that a garageman who “tows, stores, maintains, keeps or repairs,” or otherwise furnishes services or supplies to a motor vehicle at the request or with the consent of the owner, has a lien upon such service to the extent of the sum due and owing for the services as provided. This statutory lien upon the property remaining in the garage owner’s possession takes priority over even a perfected security interest. (New York Yellow Cab Co. Sales Agency v Laurel Garage, 219 App Div 329, 334 [1st Dept 1927].) The garageman may detain the vehicle until such sum is paid, and, if not paid, may secure his payment by the sale of the vehicle. (Lien Law § 201.)
The statute clearly inures to the benefit of a garage owner who can establish the following elements: (1) the garage is the bailee of a motor vehicle (see, Slank v Dell's Dodge Corp., 46 AD2d 445, 448 [4th Dept 1975]); (2) it has performed garage services or stored the vehicle with the vehicle owner’s consent *175 (cf. id.); (3) there was an agreed-upon price or, if no agreement on price had been reached, the charges are reasonable for the services supplied (see, New York Yellow Cab Co. Sales Agency v Laurel Garage, 219 App Div 329, 333, supra); and (4) the garage is a duly registered motor vehicle repair shop as required under article 12-A of the Vehicle and Traffic Law. (See, Lien Law § 184 [4].)
Here, Consumer has failed to satisfy the element of consent. To satisfy the consent element defendant relies on the agreement entered into by Jem Towing and Dr. Geltman, whereby the latter authorized the former to repair the car “to new condition.” While Continental does not dispute the validity of the assignment of the performance of the repairs to Consumer, plaintiff argues that the “as per insurance estimate” clause of the repair agreement limited defendant’s authority to make repairs up to the estimated cost of repairs as to be determined by the insurance company or its agent. This Court agrees. Defendant, however, does not dispute this interpretation of the car repair contract. Instead, defendant claims that the insurance claim adjuster orally informed it that the estimated cost of repairs was $20,000.
Defendant, however, has not established to the Court’s satisfaction that it was granted authority to make repairs beyond the written estimate. It defies credulity that a claim adjuster would write such a low estimate of repairs ($3,239) and then, for no apparent reason, would orally provide a significantly higher amount ($20,000) to the repair shop. Rather, this Court finds that the repair shop elected to perform the work without the prior confirmation of the insurance carrier, in contravention of the repair agreement. Consumer, thus, acted at its own peril and cannot now benefit for its error or oversight by seeking to keep and sell an automobile that was repaired in violation of a New York statute. (Cf. General Motors Acceptance Corp. v Chase Collision, 140 Misc 2d 1083 [Sup Ct, Suffolk County 1988].)
Even if Consumer were to convince this Court that it received oral authority to proceed with repairs above the amount in the written estimate, defendant would have an insurmountable task of convincing this Court that the Garage Keeper’s Lien’s license requirement has been satisfied in this case. As noted above, Consumer’s consent to repair the car was acquired through its assignment of the car repair contract. The legal effect of an assignment of such a bilateral executory contract is that the assignee stands in the shoes of the assignor, taking *176 his rights and remedies as provided by the assignment, subject to any defenses which the debtor may have against the assignor prior to the assignment. This leads to the question hitherto unanswered in the reported cases as to whether one who is assigned an obligation of car repairs that cannot be enforced by its assignor which is not licensed to perform such repairs may be enforced by its assignee who is licensed to perform such work.
A similar situation involving the licensing laws for home improvement contracts was addressed in Matter of Ratner (180 Misc 2d 480 [Sup Ct, NY County 1999]). In Ratner, a general contractor entered into a contract with a homeowner to make renovations to a cooperative apartment. The general contractor, who was not licensed to make home repairs, subcontracted with a third party for the repairs of windows in the apartment. The Ratner court held that a contractor’s failure to be licensed to do home improvement precluded his subcontractor from enforcing a mechanic’s lien against the homeowner for the “window work” done pursuant to the subcontract. The court noted that since the contractor was not licensed to act as a home improvement contractor, it could not recover from the homeowner for the work done by the subcontractor. It follows, the court reasoned, that the subcontractor may not maintain a mechanic’s lien against the subject premises since the subcontractor was standing in the shoes of the contractor. (See also Dartmouth Plan v Valle, 117 Misc 2d 534 [Sup Ct, Kings County 1983] [plaintiff, finance company that purchased a retail installment obligation secured by a mortgage arising out of a home improvement work performed by an unlicensed contractor, may not recover against the homeowner on the home improvement obligation].)
There is no valid reason, in this Court’s view, for not extending such exclusionary rule to the Garage Keeper’s Lien situation where an assignee acquired a car repair contract from an unregistered business. First, in excluding unregistered repair shops from the application of their liens, the Legislature enunciated a policy of strict compliance with the statute: “The state has a strong public policy of requiring repair shops to be registered. When a repair shop flouts the Motor Vehicle Repair Shop Registration Act [Vehicle and Traffic Law § 398 et seq.] by failing to register, or by operating while its registration is suspended or revoked, or by operating with an expired registration, it should not be allowed to benefit from other provisions of law. Such an unregistered repair shop should be denied the *177 benefits granted legitimate businesses by Lien Law Section 184.” (Mem of NY State Dept of Motor Vehicles, 1985 McKinney’s Session Laws of NY, at 2976.)
Accordingly, as a matter of public policy, an assignee should not be permitted the benefits of the Garage Keeper’s Lien obligation which the unlicensed assignor is denied. It would make little sense to preclude an unlicensed contractor from such benefits but permit the benefits to his assignee. This would allow evasions of the licensing law. If the public is to be protected from unlicensed contractors, this protection must extend to those who acquire obligations from unlicensed contractors. “A party may not achieve by indirection that which is directly prohibited.” (Blake Elec. Contr. Co. v Paschall, 222 AD2d 264, 267 [1st Dept 1995].)
Significantly, defendant had the opportunity to make a simple inquiry in order to determine whether its assignor was licensed. Having failed to do so, any loss which Consumer may sustain is a result of its own carelessness in failing to make this inquiry. Consumer should have been particularly careful to assure itself that the business contractor with whom it was acquiring car repair work was licensed. (Cf. Star Credit Corp. v Molina, 59 Misc 2d 290, 293-294 [Civ Ct, NY County 1969].)
The final point to be addressed is whether defendant has a quantum meruit claim for the services rendered to the 1994 Toyota. Consumer’s quantum meruit defense is without merit. To recover under a theory of quasi contract, a party must demonstrate that services were performed for the other party resulting in its unjust enrichment. (Kapral’s Tire Serv. v Aztek Tread Corp., 124 AD2d 1011, 1013 [4th Dept 1986].) It is not enough that the other party received a benefit from the activities of the party seeking compensation; if services were performed at the behest of someone other than the party who received the benefit, the party must look to that third person for recovery. (Kagan v K-Tel Entertainment, 172 AD2d 375, 376 [1st Dept 1991]; see also Citrin v Columbia Broadcasting Sys., 29 AD2d 740 [1st Dept 1968]; Armstrong v I. T. T. S. Corp., 10 AD2d 711 [2d Dept 1960].)
Conclusion
Although the Court is sympathetic to defendant’s position, the law is clear and affords no benefit to Consumer under the circumstances of this case. Based on the credible evidence, including the testimony, exhibits, and memorandum submitted to this Court, the garageman has failed to establish the valid *178 ity of its Garage Keeper’s Lien. Accordingly, the Court finds in favor of plaintiff and dismisses the counterclaim. The lien must be vacated and the vehicle released to plaintiff’s possession. Plaintiff must settle the judgment accordingly.