THIRD DIVISION

March 15, 2000

No. 1-99-1958

VANESSA JACKSON, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. )

)

SOUTH HOLLAND DODGE, INC., and )

CHRYSLER FINANCIAL CORPORATION, ) Honorable

) Lester M. Foreman,

Defendant-Appellee. ) Judge Presiding

)

JUSTICE WOLFSON delivered the opinion of the court:

Consumers, when buying a car on credit, often are encouraged by dealerships to agree to an extended service protection contract or "extended warranty."  Persuaded by the added protection these plans promise, consumers purchase the contracts and the cost is typically added to the amount being financed.

Some dealerships list the cost of the extended warranty/service contract on the financing statement of the installment contract as a fee paid to the warranty provider, usually the auto manufacturer.  But that entire amount does not always go to the warranty provider.  A large part of the extended service fee often is retained by the dealer.  The consumer is not told that.  The consumer accepts the dealership's inflated charge without question or negotiation.

The question before this court is whether an assignee of the motor vehicle retail sales installment contract can be held liable for the dealership's misrepresentations in the financing statements if the defect (overcharge for the service contract) is not apparent on the face of the document.

In this case, the trial court granted the assignee's motion to dismiss the consumer's complaint.  We affirm the trial court.

FACTS

We look to the plaintiff's amended complaint and exhibits attached to it for the facts of this case:

On May 17, 1995, Vanessa Jackson (Jackson) purchased a Dodge Stratus from the South Holland Dodge (SHD) dealership.  She also agreed to purchase a service contract/extended warranty.  Jackson entered into a motor vehicle retail sales installment contract with SHD.  One of the forms completed by SHD was entitled "Itemization of Amount Financed," and listed in section (4): "Other Charges Including Amounts Paid to Others on Your Behalf."  One of the blank spaces beneath this heading was filled in:

The $1099 listed in the financing statement does not represent the actual amount SHD paid to Chrysler for the service contract.  In fact, SHD paid only a portion of the $1099 to Chrysler and retained the remainder for itself.  SHD subsequently assigned the retail installment contract to Chrysler Finance Corporation (CFC). 

On February 27, 1998, Jackson brought a class action against SHD and CFC for damages suffered by her and others similarly situated as a result of these alleged misrepresentations made by SHD on the financing statement.  Jackson further alleged the manner in which these charges are listed on the form, 
i.e.
, in a section where non-negotiable items such as filing fees and licensing fees are listed, leads consumers to believe the cost of the service contract/extended warranty is a non-negotiable fee, which it is not.  This, said Jackson, is a deceptive practice.  Jackson claimed these deceptive practices and misrepresentations constituted violations of the Illinois Consumer Fraud Act (ICFA) and the Illinois Sales Finance Agency Act (ISFAA), for which both SHD and CFC were liable.

Jackson contended CFC could be held liable because the retail installment contract contained a statement of the FTC's Holder Rule ("Holder Notice") which provides:

"Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant thereto or with the proceeds hereof."

Alternatively, Jackson alleged CFC had actual knowledge the amounts listed in the retail installment contracts were a misrepresentation because of its "extensive experience" in the industry and because its predecessor (Chrysler Credit) had cooperated in a New York State Attorney General study on the practice of dealer overcharging.

In an amended complaint filed September 28, 1998, Jackson added no new counts, but added to the allegations against CFC.  Jackson contended:

"On information and belief, for years prior to May 17, 1998, (sic) and continuously since that date, Chrysler [Financial Corp.] participated in a scheme and therefore acted in concert, uniformly, consistently, and regularly to exact monies from customers in amounts in excess of what the actual cost for extended warranties or service contracts were by misrepresenting that an amount was paid to the extended warranty or service contract provider that was in excess of the amount actually paid to the said provider."

Jackson did not allege CFC actively and directly participated in making the misrepresentations to the consumer.  Rather, Jackson alleged CFC reviewed the retail installment contracts, forms provided to the dealers, before accepting the assignment and was "aware that contracts *** often contain[ed] misleading disclosures regarding the amounts paid to third parties for a service contract."  Jackson further alleged CFC "had, from its expansive experience in financing used car transactions, actual knowledge *** and knew full well that the amount represented on the retail installment contract *** as having been disbursed to the issuer of [the] extended warranty or service contract *** was not in fact disbursed to those issuers."

Finally, Jackson alleged CFC, "as a major purchase (sic) of automobile retail installment contracts, was clearly aware of dealer retention of significant portions of the amount charged for an extended warranty" because these practices were well known in the industry and because, in 1990, "the Attorney General of New York issued a report indicating the widespread overcharging by automobile dealers for extended warranties and service contracts."  Jackson contended CFC "acquiesced in and approved of the representations" used by SHD and other car dealerships because it benefitted from them -- the inflated price of the service contract meant an increased amount was financed by the consumer.

CFC filed a sec. 2-615 motion to dismiss (735 ILCS 5/2-615 (West 1996)).  Citing 
Lanier v. Associates Finance, Inc.
, 114 Ill. 2d 1, 499 N.E.2d 440 (1986), CFC said it could not be held liable for a violation of the ICFA based on SHD's misrepresentations because, as an assignee, it could not be held liable under the federal Truth In Lending Act (TILA).  15 U.S.C. §1601 
et seq
.  Under TILA, an assignee can be held liable only if the misrepresentation is "apparent on the face" of the document.  See 15 U.S.C. §1641.  The Holder Notice didn't change this, said CFC.

Furthermore, CFC said, because it never made any representations directly to Jackson, Jackson would not be able to prove CFC violated the Motor Vehicle Retail Installment Sales Act (MVRISA) and, therefore, there was no liability under the ICFA or the ISFAA.

The trial court granted CFC's motion, dismissing Jackson's complaint against CFC with prejudice on April 29, 1999.  Language was added pursuant to Supreme Court Rule 304(a), making the order final and appealable.

Now on appeal, Jackson contends the trial court should not have dismissed the ICFA claim or the ISFAA claim against CFC.

DECISION

Standard of Review

A section 2-615 motion to dismiss attacks the legal sufficiency of a complaint.  
Lewis E. v. Spagnolo
, 186 Ill. 2d 198, 710 N.E.2d 798 (1999).  In ruling on the motion, a court must accept as true all well-pled facts in the complaint and all reasonable inferences which may be drawn from the facts.  The question to resolve is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted.  
Urbaitis v. Commonwealth Edison
, 143 Ill. 2d 458, 575 N.E.2d 548 (1991).  A cause of action will not be dismissed on the pleadings unless it clearly appears no set of facts can be proved which will entitle the plaintiff to recover.  
Bryson v. News America Publications, Inc.
, 174 Ill. 2d 77, 86, 672 N.E.2d 1207 (1996).  Review is 
de novo
.  
Vernon v. Schuster
, 179 Ill. 2d 338, 344, 688 N.E.2d 1172 (1997).

The Truth In Lending Act

Jackson never has claimed CFC violated TILA.  A violation of TILA is not one of the charges against CFC.  In fact, Jackson concedes CFC can not be held liable under TILA for the dealer's misrepresentations because the misrepresentations do not appear on the face of the assigned documents.  Instead, Jackson contends CFC can be held liable for violations of the Illinois Consumer Fraud Act despite its exemption from liability under TILA.

This court must decide, then, whether CFC's exemption from liability under TILA insulates it from state law claims.  Before addressing this issue, some background is helpful:

In May 1990, the office of the New York State Attorney General, Bureau of Consumer Frauds & Protection, issued a report entitled: 
Dealer Pricing Practices in the Sale of Automobile Extended Service Contracts: Consumers Are Paying Too Much
.  The New York Attorney General asked several car manufacturers to provide pricing data on dealer sales of service contracts for a six month period in 1989.  Based on the compiled statistics, the report concluded, in 54% of the cases new car buyers paid in excess of the manufacturers' suggested retail price (MSRP) for the service contracts.  In fact, on an average the mark-up was 76% over the MSRP.  Since two independent sources determined nearly half of new car buyers purchased extended warranty contracts, the problem was serious -- nationwide an estimated two million consumers had been overcharged in excess of $300 million.

Cases soon began to appear in the courts.  In 
Gibson v. Bob Watson Chevrolet-Geo, Inc.
, 112 F.3d 283, 284 (7
th
 Cir. 1997), the court reviewed the consolidated appeals in three class action suits of "some fifteen almost identical class actions filed by the same law firm against such dealers."  In these federal actions car dealerships were charged with violating TILA.   Misrepresenting the actual cost of the service contracts, plaintiffs said, violated the purpose of TILA, which is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing practices."  15 U.S.C. §1601(a) (1994).

Additionally, plaintiffs alleged the mark-ups on the cost of extended warranties, which were incorrectly listed in the financing statements as payments "made on your behalf," violated §1638(a)(2)(B)(iii) of TILA, which requires a lender to provide a written itemization of the amount financed, including amounts paid to third parties.  15 U.S.C. 
§1638(a)(2)(B)(iii) (1994).

The 
Gibson
 court, resolving conflicting determinations by the district courts, held a cause of action for violation of TILA was stated when plaintiffs alleged dealerships misrepresented the actual cost of extended warranties on the financing forms.

After 
Gibson
, attempts were made to expand liability beyond the dealerships to include assignees of motor vehicle retail sales credit contracts.  See 
Walker v. Wallace Auto Sales, Inc.
, 155 F.3d 927 (7
th
 Cir. 1998) and 
Taylor v. Quality Hyundai, Inc.
, 150 F.3d 689 (7
th
 Cir. 1998).  Assignee liability was premised on (1) the FTC's Holder Notice, and (2) the assignee's "knowledge" of the dealers' fraudulent practices.  Because assignees were aware of the dealers' fraud, the plaintiffs claimed, the defect became "apparent on the face of the document" and the assignees were then directly liable under TILA.

Both the 
Taylor
 and 
Walker
 courts
 declined to extend liability to subsequent assignees under the facts alleged.  Section 131 of TILA (15 U.S.C. §1641 (1994)) limits the liability of subsequent assignees to instances where the TILA violation is "apparent on the face of the disclosure statement."  To be "apparent" there must be: "(1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter."  15 U.S.C. §1641(a) (1994).

The fact that assignees might be aware of certain creditor practices, said 
Taylor
, did not equate to actual knowledge that a particular item on a TILA form was inaccurate or incomplete.  The court refused to impose a duty of additional inquiry on the assignees.

Furthermore, the FTC Holder Notice could not override the specific limitations on assignee liability set forth in §1641.  In 
Taylor
 the court said:

"The Holder Notice, even though contained within the contract, was not the subject of bargaining between the parties, and indeed could not have been.  It is part of the contract by force of law, and it must be read in light of other laws that modify its reach."  150 F.3d at 693.

Walker
 agreed:

"[T]he inclusion of the FTC'S Holder Notice in a retail installment contract did not trump the clear command of §131 that subsequent assignees can be held liable under TILA only when the violation is apparent on the face of the disclosure statement."  
Walker
, 155 F.3d at 935.

Application of 
Lanier

In a number of federal cases, plaintiffs supplemented their TILA claims with allegations of state common and statutory law violations.  When confronted with state law claims against the assignees in factual circumstances nearly identical to the ones in our case, judges in the U.S. District Court for the Northern District of Illinois took one of two approaches: (1) they declined to exercise supplemental jurisdiction once the federal claims were disposed of, or (2) they dismissed the state claims in reliance on 
Lanier v. Associates Finance, Inc.
, 114 Ill. 2d 1, 499 N.E.2d 440 (1986).  See 
Agpawa v. Peter Levin Pontiac, Inc.
, 1998 WL 953723 (N.D.Ill.)(assignee not liable under TILA is exempt from ICFA and ISFAA actions); 
Young v. Ford Motor Co.
, 1998 WL 673659 (N.D.Ill.)(after finding no assignee liability under TILA, refused to exercise supplemental jurisdiction over state claims); 
Brownlee v. Joe Cotton Ford, Inc.
, 1999 WL 65053 (N.D.Ill.)(unless an assignee voluntarily accepts assignment of a contract with patently defective disclosures, it is in compliance with TILA and, hence, not liable under the ICFA); 
Franks v. Rockenbach Chevrolet Sales, Inc.
, 1999 WL 160307 (N.D.Ill.)(regardless of the Holder Notice, assignees not liable under TILA cannot be held liable under the ICFA); 
Fillinger v. Willowbrook Ford, Inc.
, 1999 WL 166995 (N.D.Ill.)(once parties agreed no TILA violation could be asserted, court refused to exercise supplemental jurisdiction over state law claims); 
Cemail v. Viking Dodge, Inc.
, 1999 WL 1295118 (N.D.Ill.)(only remaining claims were state law claims, over which the court refused to exercise supplemental jurisdiction).

When resolving the state law claims
, the "overwhelming consensus" was that compliance with TILA is an absolute bar to liability under the ICFA.  See 
Franks v. Rockenbach Chevrolet Sales, Inc.
, 1998 WL 919714 (N.D.Ill.) and the nine federal district court opinions it cites.  In fact, we have been unable to find any federal court decision holding to the contrary, though some courts have declined to exercise jurisdiction over state claims after dismissing TILA claims.

Those courts which refused to exercise supplemental jurisdiction did so because they believed 
an assignee's liability for state law claims "turns on how expansively or how narrowly one reads 
Lanier
," an issue "not free from doubt" and best left to the state courts, which have "greater expertise in applying state law."  See 
Cemail
, 1999 WL 1295118.

Lanier
 stands for the proposition that 
compliance
 with TILA disclosure requirements precludes liability on state law claims.  It has been cited by courts for that point on a number of occasions.  See for example, 
Price v. FCC National Bank
, 285 Ill. App. 3d 661, 673 N.E.2d 1068 (1996)(principal's compliance with TILA meant compliance with the Illinois Credit Card Issuance Act and precluded liability for common law fraud and breach of contract); 
Beckett v. H&R Block, Inc.
, 306 Ill. App. 3d 381, 714 N.E.2d 1033 (1999)(disclosures sufficient under TILA were also sufficient under the ICFA).

Lanier
 was a class action suit brought against a financing agency whose loan documents provided that interest would be computed "using the Rule of 78's method" if the borrower prepaid the outstanding balance.  The use of the term "Rule of 78's," without explanation, was alleged to be deceptive to the typical consumer and fraudulent misrepresentation of the finance charge during the early months of the credit transaction.  Common law fraud and violations of the ICFA were charged.

Section 10(b)(1) of the ICFA (815 ILCS 505/10(b)(1) (West 1996)) provides :

"Nothing in this Act shall apply to any of the following:

(1) Actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States."

Since the
 Federal Reserve Board, granted authority by Congress to prescribe regulations to carry out the purposes of the Truth in Lending Act (15 U.S.C. §1604 (1981)), already had concluded that simple reference by name to the Rule of 78's satisfied TILA's requirements, 
Lanier
 held compliance with disclosure requirements of TILA was a defense to liability under the ICFA.

The 
court
 said:

"Because the Illinois consumer credit statutes requiring specific disclosures are met by compliance with the Truth in Lending Act, we believe that the Consumer Fraud Act's general prohibition of fraud and misrepresentation in consumer transactions did not require more extensive disclosure in the plaintiff's loan agreement than the disclosure required by the comprehensive provisions of the Truth in Lending Act."  
Lanier
, 114 Ill. 2d at 17.  See also, 
Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.
, 186 Ill. 2d 472, 713 N.E.2d 543 (1999)(reaffirming 
Lanier
 and finding compliance with federal requirements set forth in the Real Estate Settlement Procedures Act (RESPA) precluded liability under the ICFA.)

When applying 
Lanier
 to assignees, federal courts recognized the distinction between "complying with a statute" and "not being liable for someone else's failure to comply," but found the distinction unavailing.  A subsequent assignee, they said, "complies" with TILA when it does not commit an act forbidden by the Act.  
Brownlee v. Joe Cotton Ford
, 1999 WL 65053 (N.D.Ill.).

The only way a subsequent assignee can violate TILA is by voluntarily accepting from a creditor assignments that contain disclosures which "can be determined to be incomplete or inaccurate from the face of the disclosure statement" or "which do[] not use the terms required to be used by [TILA]." U.S.C. §1641(a) (1994).

By accepting an assignment without patent defects, a subsequent assignee is "in compliance" with TILA, or, put another way, the "transaction" (assignee acceptance of an assignment without facial defects) is "authorized" by TILA.   Under these conditions, there can be no ICFA liability.    
Brownlee v. Joe Cotton Ford
, 1999 WL 65053 (N.D.Ill.).

Despite the "overwhelming consensus" of federal courts on the application of 
Lanier
 to subsequent assignees exempted from TILA liability, an Illinois second district appellate court recently decided an assignee's exemption from TILA liability was not a defense to ICFA liability.
  See 
Pawlikowski v. Toyota Motor Credit Corp.
, No. 2-98-1649, filed December 23, 1999.

The 
court said:

"In this case, TMCC's [the assignee] argument that it is not liable under TILA does nothing to support its position that the plaintiff cannot state a cause of action under the Consumer Fraud Act.  At the outset, we note that the plaintiff cannot assert a claim under TILA against TMCC in this case because section 1641(a) of TILA limits the circumstances under which an assignee may be liable for the acts of the original creditor.  15 U.S.C. §1641(a) (1994).  Moreover, TMCC's conduct was not "authorized by" TILA so as to bring it within the mandates of the holding in 
Lanier
.  Indeed, TMCC did nothing that was affirmatively condoned by TILA.  The fact that TMCC is not liable under TILA cannot automatically translate into a finding that TMCC did not engage in an unfair and deceptive practice under the Consumer Fraud Act.  For this reason, we are persuaded by the reasoning in 
Bernhauser
, 
Fillinger
, and 
Rizza
, and we conclude that TMCC's escape from liability under TILA does not serve as an affirmative defense to the plaintiff's Consumer Fraud Act cause of action."  
Pawlikowski
, slip op. at 16-17.

We disagree with the path taken in 
Pawlikowski
.  Nothing in 
Lanier
 requires the assignee's conduct be "affirmatively condoned" by TILA.  Compliance is enough.

The cases 
Pawlikowski
 found persuasive do not provide support for its decision.  Pawlikowski cites 
Fillinger
 and 
Rizza
 -- two federal cases in which the courts refused to exercise supplemental jurisdiction over state law claims (
Fillinger v. Willowbrook Ford, Inc.
, 1999 WL 166995 (N.D. Ill.) and 
Cheng v. Rizza Chevrolet
, No. 97 C 1711 (N.D. Ill. 1999)) -- while 
ignoring the majority of federal cases which actually considered the state law claims and found 
Lanier
 to control
.

Pawlikowski also cites 
Bernhauser v. Glen Ellyn Dodge, Inc.
, 288 Ill. App. 3d 984, 683 N.E.2d 1194 (1997), 
which provides no greater support for its
 decision.  In 
Bernhauser
 
the court ruled on three consolidated appeals.  No assignee was a party to any of the appeals
.  Bernhauser had alleged Chrysler Corporation, the manufacturer, not the finance company, conspired with the dealer to make false representations about the actual cost of the extended-service contract he was induced to buy.  Chrysler never contended TILA's §1641 exempted it from liability.  
Bernhauser
 sheds no light on the question of whether exemption from TILA liability should bar state law claims against an assignee.

We see no reason why 
Lanier
's reach should not extend to instances where, as here, an assignee is free from liability under federal law because of a TILA exemption.  As 
our supreme court said in 
Lanier
, there is a "consistent policy" throughout Illinois law against extending disclosure requirements beyond what is mandated by federal law.  
Lanier
, 114 Ill. 2d at 17.  If an assignee were liable under the ICFA, though exempt from liability under TILA, we would be imposing disclosure requirements on a subsequent assignee beyond those mandated by federal law.

The practice of overcharging for extended warranties/service contracts, even if as rampant as projected by the New York State Attorney General in its 1990 report, can be expected to occur only in a little more than half of the cases.  That being the case, an assignee would be under a constant duty to police dealerships to determine whether charges cited on the financing documents were correct.

The Federal Reserve Board understood this and refused to place such an onus on assignees.  Weighing the benefit against the cost of having assignees liable for misrepresentations made in retail sales contracts, the balance tipped in favor of assignees being liable only when the defect could be discovered by looking at the documents
.  We are unwilling to upset that balance unless there is more than mere inferences of collusion between the original maker and a subsequent assignee.  A subsequent assignee simply is not legally responsible for the misrepresentations made by the dealer to the consumer.  There is no duty of inquiry or investigation placed on an assignee.  See 
Green v. Levis Motors, Inc.
, et al, 179 F.3d 286 (5
th
 Cir. 1999).

Our decision should not be interpreted as a blanket immunization of assignees, no matter their conduct.  We reject CFC's contention that §1641(a) protects an assignee from any claim of fraud by a consumer, even where the assignee's fraud is active and direct.

If a plaintiff were to allege specific facts showing the assignee sat down with the car dealer and concocted a scheme to put false statements into the "Paid to" box of the finance contract section entitled "Other Charges Including Amounts Paid to Others on Your Behalf," CFC would say the assignee is exempt from state fraud actions filed against it by the duped buyer.  We cannot agree.  We do not believe Congress intended to shield assignee finance companies from their own active and direct fraud.  Nor do we believe 
Lanier
 intended to extend that kind of blanket immunity.

If factual allegations exist from which one could conclude an assignee actively and directly participated in the fraud -- 
i.e.
, facts, pled with particularity and specificity, from which fraud is the necessary and probable inference, including the exact misrepresentations made, when they were made, who made them and to whom (
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 497 (1996)) -- such an assignee would be liable for its own pre-

assignment fraud.  See for example, 
Bernhauser
, 288 Ill. App. 3d at 996-97 (allegations that manufacturer, through a pre-sale agreement with dealership, actively and directly participated in plan to defraud buyers were sufficient to state a cause of action for civil conspiracy).  The liability would be independent of and separate from the TILA assignee exemption.

For this reason, though we disagree with 
Pawlikowski
 on the application of 
Lanier
, our decision does not conflict with 
Pawlikowski
 in the long run.  In 
Pawlikowski
 the court 
found the plaintiff's complaint lacked facts concerning the nature of the alleged concealment and TMCC's involvement in it.  The court said the complaint lacked any allegations that the inflated charge for an extended warranty was a "material fact" on which TMCC intended the plaintiffs to rely.  The 
Pawlikowski
 court rejected, as insufficient, conclusory allegations of "concert of action" and "conspiracy" similar to the allegations in our case.

Based on the 
Pawlikowski
 court's comments, 
nothing short of substantiated allegations that an assignee, before the assignment, actively and directly participated with the dealer in the fraudulent misrepresentations to the buyer would be enough to hold an assignee liable under state law.  TILA would provide no protection.

Here, by accepting documents without patent defects, CFC acted in a manner consistent with TILA requirements.  It is "in compliance" with TILA.  This being the case, CFC, as an assignee,  is exempt from ICFA liability.  But that is not the end of the inquiry.

We have scoured the amended complaint for the existence of factual assertions that would satisfy the pleading standard established in 
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 501, 675 N.E.2d 584 (1996) and 
Board of Education v. A, C & S, Inc
., 131 Ill. 2d 428, 457, 546 N.E.2d 580 (1989).  We found none.

Jackson provides vague conclusions.  There is no suggestion CFC, before the assignments took place, actively and directly participated in misrepresenting facts to the plaintiffs.  Jackson's allegations of "concert of action" are nothing more than a claim that by accepting assignments after the extended service contracts were sold CFC knowingly received the benefit of another's fraud, an allegation held insufficient to state a cause of action under ICFA in 
Zekman v. Direct American Marketers, Inc.
, 182 Ill. 2d 359, 695 N.E.2d 853 (1998).

The closest Jackson came to a fact allegation was the claim that CFC supplied SHD with the blank forms the dealer used in the finance transaction with Jackson.  We do not see fraud in that.  There was nothing deceptive 
per se
 about the forms.  The forms did not promote the deceptive practice of the dealers -- no more than the Internal Revenue Service could be said to promote fraud when it supplies blank forms to tax cheaters.  The allegations, singly or together, do not even add up to a near miss.

Finally, we agree with the federal courts that have decided the FTC's Holder Notice cannot be used to "trump" the exemption from liability granted by operation of TILA.  If an assignee is exempt from liability under TILA, the FTC Holder Notice can not be used to alter that finding.  See 
Walker v. Wallace Auto Sales, Inc.
, 155 F.3d 927 (7
th
 Cir. 1998); 
Taylor v. Quality Hyundai, Inc.
, 150 F.3d 689 (7
th
 Cir. 1998).  Nor is the TILA violation -- overcharging for extended service contracts -- the kind of substantial nonperformance or substantial breach by a seller that would permit Jackson to seek rescission of the credit contract.  See 
Felde v. Chrysler Credit Corp.
, 219 Ill. App. 3d 530, 580 N.E.2d 191 (1991).

Since the allegations in this case do not suggest CFC, before accepting any assignments, actively and directly participated in the dealer's misrepresentations about the cost of the extended warranties, there is no basis for holding CFC liable for a violation of TILA or ICFA or ISFAA.  Nor can there be a claim for "restitution."

Given the barrage of similar lawsuits in this federal circuit and around the country, we assume plaintiff is not able to form better factual allegations of fraud by CFC.  Remanding for more pleadings would serve no useful purpose.  The trial court properly dismissed the complaint against CFC.

CONCLUSION

We affirm the order of the trial court granting CFC's 2-615 motion for dismissal of the claims lodged against it.

Affirmed.

CERDA, and BURKE, JJ., concur.