831 A.2d 564 (2001)
363 N.J. Super. 145
Frances SCOTT, Plaintiff(s)
v.
MAYFLOWER HOME IMPROVEMENT CORP., et als., Defendant(s)
Superior Court of New Jersey, Law Division, Camden County.
Decided August 10, 2001.
*567 Madeline L. Houston and Melissa J. Totaro, Bloomfield, for plaintiffs (Houston & Totaro, attorneys).
Carmen Saginario, Jr., Trenton, for defendant BankAtlantic (Capehart & Scatchard, attorneys).
Carmine T. Vigorito, Peterson, for defendant Martin Miller (Carmine T. Vigorito, attorney).
James M. Cutler, Livingston, for defendant MNC Credit Corp. (Stern, Lavinthal, Norgaard & Kapnick, attorneys).
John F. Kwasnik, for defendant Del Norte, Inc. (Baer, Arbeiter, Ploshnick, Tanenbaum & Weiss, attorneys, Metuchen).
Thomas A. Buonocore, Parsippany, for defendant CIT Group/Credit Finance, Inc. (Buonocore & Trevisan, attorneys).
William T. Marshall, for defendant Security Pacific (Zeichner, Ellman & Krause, attorneys, Newark). *565
*566 HUMPHREYS, J.S.C. (retired and temporarily assigned on recall).
The primary question in this class action is the extent to which financial institutions who purchase consumer home repair contracts, promissory notes, and mortgages are subject to claims and defenses of the home owners against the home repair contractors.[1]
The court holds that the financial institutions are subject to the claims and defenses of the homeowners in accordance with the FTC Holder Rule, 16 CFR Sec. 433.2. The homeowners are entitled to restitution from the financial institutions. However, the home owners are not entitled to treble damages and counsel fees in the absence of wrongdoing by the financial institutions.

I
The class members are homeowners who contend that they were victimized by unscrupulous home repair contractors. The homeowners were solicited by salespeople from Mayflower Home Improvement Corporation to enter into contracts for home repairs. The cost of the repairs was to be paid in installments. Mayflower engaged the services of Sterling Resources who took mortgages on class members' homes. The interest payments on the mortgages were between 15% and 19%. Sterling then sold the mortgage loans to banks and other financial institutions. The main defendant in this case, BankAtlantic, purchased from Sterling from 1987 to 1990 over 60 million dollars of consumer loans. Approximately $11.6 million of those loans are at issue in this litigation.
Plaintiffs allege that Mayflower engaged unlicensed salespeople who targeted minority neighborhoods. The contracts prepared by the salespersons specified the work in general terms but omitted the name, make, quality and model of the products and materials to be used. The contracts did not specify the interest rate or the total cost. The contractor's work was done in a shoddy or incomplete manner often using poor quality materials.
Plaintiffs contend that the home repair contracts, notes, and mortgages are illegal, void and unenforceable because they violate or were obtained by practices in violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -48, and the *568 New Jersey Home Repair Financing Act (HRFA), N.J.S.A. 17:16C-62, et seq.
The financial institutions (hereinafter "assignees") move for summary judgment dismissing the plaintiffs' complaint and for other relief. Plaintiffs move for partial summary judgment determining that: (1) the contracts, notes, and mortgages are illegal, void and unenforceable; (2) the class members are entitled to restitution from the assignees of all monies paid by the class members together with treble damages, attorneys fees, and expenses; (3) the class members are not liable for interest on any cash loans made to them by the home repair contractors.
The court has made a searching examination of the record including the voluminous material submitted by the parties in connection with these motions. The court finds that genuine issues of material fact are present thereby precluding final summary judgment. See Court Rule 4:46-2 and Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 666 A.2d 146 (1995).
However, partial summary judgment pursuant to Court Rule 4:46-3, is entered as follows:
1) Contracts, notes and mortgages which violate or were obtained by practices which violate the HRFA or the CFA are illegal, void and unenforceable.
2) Claims and defenses the class members have against the home repair contractors may be asserted against the assignees pursuant to the FTC Holder Rule, except that recovery against the assignees may not exceed the amount paid by the class member.
3) Class members may obtain restitution from the assignees of monies paid under the contracts, unless the assignees can prove that the class member conspired with the home contractors to defraud the assignees through the use of cash loans.
4) Class members are not entitled to recover treble damages or counsel fees against the assignees if the effect will be to render the assignees liable for more than the class member paid.
5) The assignees may assert an offset by way of quantum meruit against a claim for restitution if the assignees can prove that the class member would otherwise be unjustly enriched. The offset may include simple interest on cash loans to the class member.
6) Class members who have signed valid releases of the assignees are barred from relief.

II
The assignees argue that they are holders in due course of negotiable instruments, and therefore immune from the claims of the class members.
The holder in due course doctrine has an ancient lineage. See Miller v. Race, 97 Eng. Rep. 398 (K.B.1758). The doctrine insulates a good faith holder in due course of a negotiable instrument from almost all claims and defenses that the debtor could assert against the original creditor. See N.J.S.A. 12A:3-302.
In recent years a large body of law has developed restricting the use of the holder in due course doctrine in consumer transactions. See official comments to the 1995 amendments to the Uniform Commercial Code (UCC) N.J.S.A. 12A:3-302 (g) and 106.
The Federal Trade Commission (FTC) spearheaded that new body of law some 25 years ago by adopting the "Preservation of Consumer Claims and Defenses Rule" (The FTC Holder Rule). That rule modified the holder in due course doctrine by providing:

*569 Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.
[16 C.F.R. Sec. 433.2].
The above language was required to be placed in every consumer credit contract in 10-point bold face type.
The reasons for the FTC Holder Rule have been described by Professor Sturley as follows:
In 1975, the FTC concluded that unethical merchants and their financiers were using the venerable Holder in Due Course doctrine from the law of negotiable instruments to victimize thousands of innocent consumers. Inner-city stores were selling shoddy furniture, fly by night contractors were promising to install aluminum siding that never appeared, the proverbial used car dealers were hawking lemons, and countless other shady characters were operating in similar fashion in scores of different fields. In each of these cases, the defrauded consumer was saddled with the bill when a holder in due course demanded payment. (Michael F. Sturley, The Legal Impact of the Federal Trade Commission's Holders in Due Course Notice on a Negotiable Instrument: How Clever are the Rascals at the FTC?, 68 N.C.L.Rev. 953 (1990). See also 2 James J. White et al., Uniform Commercial Code, Sec. 17-9, at 181(4th ed.1995)).
Further, applying the FTC Holder Rule here is consistent with a New Jersey consumer regulation. The New Jersey department of Law and Public Safety has provided by regulation, N.J.A.C. 13:45 A-16.2(13)(ii), that a home improvement contract may not "require or entail the execution of any note, unless such note shall have conspicuously printed thereon the disclosures required by either State law (N.J.S.A. 17:16C-64.2 (consumer note)) or federal law (16 C.F.R. § 433.2) concerning the preservation of buyers' claims and defenses." The federal law cited is the FTC Holder Rule. See also N.J.S.A. 17:16C-64.2 (Notes in connection with home repair contracts shall not be negotiable instruments within the meaning of the Uniform Commercial Code).
The notes here all have the FTC Holder notice conspicuously printed thereon. Consequently, the assignees were on notice that the FTC Holder Rule was applicable to the notes that they were purchasing from Sterling.
The FTC Holder Rule, is therefore, applicable to the consumer obligations here. The Holder in due course doctrine will not immunize the financial institutions from the claims of the class members. See also Associates Home Equity Services, Inc. v. Troup, 343 N.J.Super. 254, 778 A.2d 529 (App.Div.2001).

III
The assignees contend that the Truth In Lending Act (TILA) 15 U.S.C. Sec. 1641 bars claims against them by consumers unless the violations of law are apparent on the face of the loan instruments.
The TILA is a federal consumer protection statute. The statute requires certain disclosures to be made in loan documents and provides for civil actions by consumers for violations of the statute.
Most courts have held that in cases seeking relief under the TILA, the violation of the TILA must be apparent on the face of the instrument notwithstanding the broad language of the FTC Holder Rule. *570 See Judge Wolin's review of the cases in Jordan v. Chrysler Credit Corp., 73 F.Supp.2d. 469 (D.N.J.1999); See also Lozada v. Dale Baker Oldsmobile, Inc., 91 F.Supp.2d. 1087, 1097 (W.D.Mich.2000).
However, the claims presently before the court are state law claims based on state consumer protection laws, not claims under the TILA. Nothing in the Legislative history of the TILA and its amendments suggests that Congress intended to abolish the FTC Rule in cases in which the consumer's claim is brought under state rather than federal law.
The TILA was enacted to protect consumers and should be liberally construed in their favor. Ramadan v. Chase Manhattan Corp., 229 F.3d 194, 197 (3d Cir.2000). This court agrees with those decisions which have held that in enacting and amending the TILA, Congress did not intend to abrogate the FTC Holder Rule in cases in which the consumer's claim is not based on the TILA; nor did Congress intend to immunize assignees from consumer fraud claims under state law. See Taylor v. Quality Hyundai, Inc., 150 F. 3d. 689, 693 (7th Cir.1998), cert. denied. 525 U.S. 1141, 119 S.Ct. 1032, 143 L.Ed.2d 41 (1999) (The FTC Holder notice allows the debtor to raise any claims and defenses against the assignee that the debtor may have, except for TILA claims); Pawlikowski v. Toyota Motor Credit Corp., 309 Ill. App.3d 550, 243 Ill.Dec. 1, 722 N.E.2d 767, 773 (2 Dist.1999) (The absence of liability under the TILA is not an affirmative defense to a plaintiffs' consumer fraud action under state law); Green v. Levis Motors, Inc., 179 F.3d. 286, 296 (5th Cir.1999), cert. denied. 528 U.S. 1020, 120 S.Ct. 528, 145 L.Ed.2d 409 (1999) (The TILA limits an assignees' liability only as to TILA claims); Irby-Greene v. M.O.R., Inc., 79 F.Supp.2d 630, 633 (E.D.Va.2000) (Consumer claims against assignees which are not brought under TILA are not subject to TILA limitations); Lozada, supra, at 1098 n. 2 (The court does not hold that an assignee's exemption from liability under TILA affects plaintiff's consumer claims under state law); In re Fidler, 226 B.R. 734, 737 (Bankr.D.Mass.1998) (A rescission claim based on the TILA is barred by the TILA limitation, but that does not bar the consumer's claims under the Massachusetts Consumer Statute); contra as to Illinois statutes, Jackson v. South Holland Dodge, Inc., 312 Ill.App.3d 158, 244 Ill. Dec. 835, 726 N.E.2d 1146 (1 Dist.2000), aff'd, 197 Ill.2d 39, 258 Ill.Dec. 79, 755 N.E.2d 462 (2001).
The assignees argue that N.J.S.A. 17:3B-1 bars relief to the class members here. This statute was enacted in 1969 and provides that to the extent certain enumerated New Jersey statutes, including the HRFA, are inconsistent with the TILA, compliance with TILA shall be construed to be compliance with these New Jersey statutes.
The most that can reasonably be read into N.J.S.A. 17:3B-1 is that lenders and contractors who comply with the TILA disclosure requirements are not subject on TILA claims to any greater requirements under the HRFA. It would be bizarre to conclude that the New Jersey Legislature, by enacting this 1969 law to protect consumers intended to bar defrauded consumers from obtaining relief under the FTC Holder Rule which was not adopted until 1975. See also N.J.A.C. 13:45 A-16.2 (13)(ii) cited and discussed on pages 153 and 154 of 363 N.J.Super., 568 and 569 of this Opinion. The TILA does not bar the class members in this case from relief under the FTC Holder Rule and the applicable New Jersey consumer protection statutes and regulations.

*571 IV
Defendants contend that the complaint should be dismissed because plaintiffs have failed to show any "ascertainable loss or causation" under the CFA.
[5] The CFA is one of the strongest consumer protection statutes in the country. Cox v. Sears Roebuck & Co., 138 N.J. 2, 15, 647 A.2d 454, 460-61 (1994). The history of the CFA has been one of "constant expansion." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604, 691 A.2d 350, 364 (1997). The Act should be construed liberally in favor of consumers. Cox, supra, at 14, 647 A.2d at 460.
Whether a consumer has sustained an "ascertainable loss" is determined in the light of the CFA's remedial purpose. Ibid., at 21, 22, 647 A.2d at 463-64. Thus a consumer injured by conduct which violates the CFA is not deprived of damages measured by the cost of curing defects merely because the consumer chooses to use the building or product in its defective state. Id. at 22, 647 A.2d at 464.
Further the CFA requires only a "causal nexus" between the wrongful act and the consumer's ascertainable loss. Varacallo v. Mass. Mutual Life Ins. Co., 332 N.J.Super. 31, 43, 752 A.2d 807, 813-14 (App.Div.2000). Reliance by the consumer is required in a common law fraud claim, but is not required in a CFA case. Ibid. If a consumer in a CFA case establishes the "core issue of liability," then the consumer will be entitled to a presumption of "reliance and/or causation." Id. at 51, 752 A.2d at 818.
The two plaintiff class representatives have clearly shown that causal nexus. Plaintiff Mary Johnson alleges that in November of 1989, a salesman from Maywood came to her home. She signed a "home repair contract/work order" which by its terms was a binding contract. The only dollar figure on the contract was $25,900.
Later Maywood obtained financing from Sterling. A "note/retail installment contract/financial disclosure form" was prepared. The form was then falsely backdated to make it appear that it was written and signed on the same day as the home repair contract/work order.
The price was unconscionably high. The interest rate was 17.98%. The total cost of the contract including interest had ballooned to $50,108.60.
The description stated on the home repair contract/work order was so vague that it gave no objective basis to determine what work was to be done and what materials were to be used or installed.
The HRFA prohibits Maywood, a licensed home repair contractor, from making cash loans. N.J.S.A. 17:16C-64(b). Nevertheless, Maywood through its salesperson made a cash loan of $4,000 to her. The amount was part of the $25,900 amount which appeared on the home repair contract/work order. The total amount was then financed at 18.277%.
Plaintiff Clemmon Williams alleges that in May of 1995, a Mayflower salesman, the defendant Miller, came to the plaintiff's home. Miller was never licensed by the state to act as a home repair salesperson.
A home repair contract/work order was prepared. The only dollar figure appearing on the document was $16,500.
The scenario which followed was essentially the same as with Plaintiff Mary Johnson, except that Williams did not receive any cash loan. The annual percentage rate was 16.236% and the total cost of the contract including interest was $44,107.20. Both the Johnson and the Williams' notes contained the FTC Holder Rule notice.
*572 Plaintiffs allege that the actions of Sterling, Maywood, Mayflower and their salespersons violated the New Jersey HRFA, the New Jersey CFA, and New Jersey regulations adopted for the protection of consumers. The Home Repair contracts should have disclosed the cash price, the interest, the total of the principal and interest and all credit charges, the number of installments required, the amount of each installment and the due dates thereof; the financial disclosure forms should not have been backdated, and the total cash prices listed should not have been substantially lower than the total amounts to be paid on the contracts, including interest.
The home repair contracts should have disclosed a description of the work to be done, the principal products and materials to be used or installed, including where applicable the name, make, size, capacity, model, and model year of principal products or fixtures to be installed and the type, grade, quality, size or quantity of principal building or construction materials to be used.
Further, Plaintiffs allege that the salespersons were unlicensed and that this violated the HRFA (N.J.S.A. 17:16C-77(a) and (c)).
Finally, the prices charged should not have been unconscionable, and the illegal loan should not have been made.
Plaintiffs allege that this wrongful conduct was the routine practice of Sterling, Maywood, Mayflower and their sales persons in dealing with the class members.
The practices described by the two plaintiffs reflect the widespread fraudulent practices that have occurred in the home repair contract industry. See Gene A. Marsh, Lender Liability for Consumer Fraud Practices of Retail Dealers and Home Improvement Contractors, 45 Ala. L.Rev. 1, 6-10 (1993) (Home repair "conmen" descend upon a town like locusts, pick it clean and move on); See also Kathleen E. Keest, House Rich Elderly. Easy Targets for Mortgage Scams, NBA Nat'l Bar Ass'n Magazine, January/February, 1994, Vol. 8, at 14, (Shady contractors and mortgage lenders in the home repair industry prey on the elderly and minorities).
The record here provides substantial support for plaintiffs contentions that they and other class members were the victims of outrageous fraudulent practices. The class members can very likely show that they suffered ascertainable losses within the meaning of the New Jersey Consumer Fraud Act. To conclude, as the defendants urge, that as a matter of law none of these class members suffered any ascertainable loss would in practical effect wipe the CFA and other consumer protection statutes from the statute books.

V
Plaintiffs contend, and this court agrees, that home repair contracts, notes, and mortgages which violate or were obtained by practices which violate the New Jersey Consumer Fraud Act or the New Jersey Home Repair Act are void and unenforceable. See Accountemps Div. of Robert Half of Philadelphia, Inc. v. Birch Tree Group, Ltd., 115 N.J. 614, 626, 560 A.2d 663, 669 (1989) (Public policy precludes enforcement of a contract entered into in violation of a licensing statute enacted to protect the public from fraud or incompetence).
Plaintiffs maintain with persuasive support in the record that the salespersons were unlicensed, and that their conduct flagrantly violated the above two statutes (See IV herein). Hence contracts, notes, and mortgages so obtained are illegal, void, and unenforceable.
Defendants argue that rescission of a contract is an equitable remedy and, therefore, *573 the facts surrounding each of the contracts here must be equitably weighed before the contracts can be rescinded. However, the issue is not whether a valid contract should be rescinded on equitable grounds. The contracts here are invalid and unenforceable. To enforce contracts which violate or were obtained by practices which violate important regulatory statutes enacted for the benefit of consumers would be clearly contrary to public policy and the authority of the Legislature. See Vasquez v. Glassboro Service Ass'n, Inc., 83 N.J. 86, 98, 415 A.2d 1156, 1162 (1980) (Courts in New Jersey have refused to enforce contracts that violate the public policy of the state); Huffmaster v. Robinson, 221 N.J.Super. 315, 321, 534 A.2d 435, 438-39 (Law Div.1986) (An auto repair contract which violates the Consumer Fraud Act cannot be enforced even though the repair person acted in good faith); Blake Constr. v. Pavlick, 236 N.J.Super. 73, 564 A.2d 130 (Law Div.1989) (A home improvement contract which violates the Consumer Fraud Act is void and cannot be enforced notwithstanding the good faith of the home improvement contractor) overruled on other grounds 246 N.J.Super. 615, 588 A.2d 444 (App.Div.1991); Tanenbaum v. Sylvan Builders, Inc., 29 N.J. 63, 71-2, 148 A.2d 176, 181-82 (1959) (The Act licensing Real Estate Brokers is a regulatory measure and represents the strong public policy of our state; hence an unlicensed broker is not entitled to compensation for his services either in contract or tort); Dartmouth Plan, Inc. v. Valle, 117 Misc.2d 534, 458 N.Y.S.2d 848, 852 (N.Y.Sup.Ct.1983) (Assignee of unlicensed home repair contractor cannot foreclose its assigned mortgage or otherwise recover against home owner on the contract or even in quantum meruit; the burden is on the assignee to "make sure it is purchasing obligations of a licensed home improvement Contractor"); In accord with Dartmouth, is Community National Bank & Trust Co. of New York v. McClammy, 138 A.D.2d 339, 525 N.Y.S.2d 629 (N.Y.App. Div.1988); abrogated on other grounds Beach v. Ocwen Federal Bank, 523 U.S. 410, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998).

VI
Plaintiffs contend that they are entitled to restitution of payments they made pursuant to the illegal contracts, notes, and mortgages. The courts in other jurisdictions have differed on this issue. See Associates, supra, 343 N.J.Super. at 277, footnote 9, 778 A.2d at 543, footnote 9.
In Ford Motor Credit Co. v. Morgan, 404 Mass. 537, 536 N.E.2d 587, 589 (1989), the court construed the FTC Holder Rule to permit an affirmative recovery against assignees only in "limited circumstances." The court concluded that the FTC "anticipated that the rule would enable the courts to weigh the equities in the underlying sale, and remain the final arbiters of equities between a seller and a consumer." Id. at 590.
A number of courts have followed the Ford decision. See cases cited in Lozada v. Dale Baker Oldsmobile, Inc., supra, 91 F.Supp.2d at 1087. See also Irby-Greene, supra, at 636 (Affirmative use of FTC Holder Rule is generally limited to the "rare situation" where the seller's breach renders the transaction practically worthless to the consumer).
However, in Oxford Finance Companies v. Velez, 807 S.W.2d 460, 463 (Tex.Ct.App. 1991), the court held that consumers could pursue claims for affirmative relief against assignees regardless of whether the consumers received little or nothing of value under the contract. The court in Lozada, supra, at 1093 made a comprehensive and persuasive analysis of the issue and concluded that the FTC Holder Rule is not *574 limited to cases in which the consumer received little or nothing of value or in which rescission is appropriate. See also Simpson v. Anthony Auto Sales, Inc., 32 F.Supp.2d 405, 409 (W.D.La.1998) (Court agreed with the Oxford decision that consumers need not first prove that they received little or nothing of value in order to recover from the assignee).
The Lozada court noted that in 1999, the FTC staff in an informal opinion letter expressly rejected the reasoning and holding in the Ford decision and approved the decision in Oxford. Lozada, supra, at 1096. The opinions of an agency charged with the implementation of a regulatory statute are entitled to substantial deference when that agency is charged with the implementation of the statute. Lozada, supra, at 1096-97. The opinions of staff counsel to that agency should also be given weight. Ibid.
The court is satisfied that the FTC staff and the courts in Oxford and Lozada have correctly construed the FTC Holder Rule. That Rule contains one limitation on the right of the consumer to obtain affirmative relief, namely that the affirmative relief may not exceed what the consumer has paid. If the FTC had intended to limit further the rights of a consumer to affirmative relief, it would have been a simple matter to add such additional limitations.
The FTC Holder Rule should be applied in accordance with its plain language. Judicially adding limitations on the rights of consumers beyond the one limitation contained in the FTC Holder Rule would contravene the essential purpose of the Rule, which is to shift the consequences of seller misconduct from the victim to the assignee of the seller. Lozada, supra, at 1096.
The FTC Holder Rule is designed to require the assignee of a consumer contract to step into the shoes of the seller with respect to the claims and defenses of the consumer. If the seller's shoes are too tight a fit, then the assignee need not purchase the consumer contract. Lozada, supra, at 1096; Oxford, supra, at 463, and Riggs v. Anthony Auto Sales Inc., 32 F.Supp.2d 411, 416 (W.D.La.1998) (The FTC Holder Rule is designed to reallocate the cost of seller misconduct to the creditor who is in a better position to absorb the loss or recover the cost from the guilty partythe seller); Sturley, supra, 68 N.C.L.Rev. at 977 ("Financing agencies that buy consumer paper from merchants should have little trouble demanding protection" when they receive the assignment). White et al., supra, Sec 17-9, at 189 (The creditor faced with the loss of the holder in due course defense against the victimized consumer has a variety of acceptable options, e.g. buy the commercial paper with some type of recourse, or protect against losses by raising the interest rate or purchase insurance).
The defendants assert that the financing of consumer contracts in New Jersey will end if the consumers are given rights against the financing banks. This horrifying hypothetical has a hollow ring in view of the long history of the FTC Holder Rule and the cases cited above which have upheld and applied it.
Further, if the assignees' Cassandra-like prediction comes true, then the executive and legislative branches of government will doubtless remodel the shoes. In the meantime, the court must keep the assignees in the shoes which the assignees freely chose.
In sum, the FTC staff's opinion and the cases in accord are clearly consistent with the broad protection that is given to consumers in New Jersey, a state with one of the strongest consumer protection statutes in the country. See Cox, supra, at 21, 647 *575 A.2d at 463-64. The egregious misconduct of the home repair contractors here warrants restitution of the monies the class members paid under these contracts.
The defendants maintain that some class members should be denied restitution because they conspired with Sterling and Mayflower to defraud the assignees through the use of large cash loans to inflate the amount of the contract. Clearly, wrongdoers should not profit from their wrong. If the defendants can prove these allegations, they are entitled to seek relief against those class members. The defendants must prove these allegations of fraud by clear and convincing evidence. New Jersey Economic Development Auth. v. Pavonia Restaurant, Inc., 319 N.J.Super. 435, 445, 725 A.2d 1133, 1138 (App. Div.1998).
Defendants also assert that some class members received very substantial value under the contracts. The defendants contend that they are, therefore, entitled to a quantum meruit offset against the restitution claims in order to prevent these class members from being unjustly enriched.
Windfalls at the expense of innocent parties are not favored in the law. If defendants can prove these allegations, then as a matter of simple justice, they are entitled to pursue quantum meruit claims of such class members. The offsets may include simple interest on loans received by class members. The burden of proof will be on the defendants. See Kutzin v. Pirnie, 124 N.J. 500, 516, 591 A.2d 932, 941 (1991) (One who charges that another has been unjustly enriched has the burden of proving it).

VII
The defendant assignees contend that they are not liable under the New Jersey Consumer Fraud Act for treble damages and counsel fees. Plaintiffs maintain that treble damages and attorneys fees should be imposed because it will make lenders more circumspect in their lending practices and thereby promote the intent of the Consumer Fraud statute to rid the market place of wrongdoers.
In the absence of the FTC Holder Rule, the holder in due course doctrine protects good faith lenders from liability to the class members. The claims here are based on the FTC Holder Rule. This rule specifically limits the debtor's recovery to no more than the amounts paid by the debtor. The court can discern no intention in the New Jersey CFA or in any other New Jersey statute or regulation to modify further the holder in due course rule by permitting that which the FTC Holder Rule forbids.
Additionally, a court must be hesitant before imposing treble damages and counsel fees upon innocent third parties. The purpose of imposing treble damages is to punish wrongdoers. Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 139, 741 A.2d 591, 593-94 (1999). Holding a commercial lender liable for treble damages and counsel fees in excess of the amount paid by the consumer when that lender has not participated in any wrongful conduct, is clearly inconsistent with that purpose.
Further, imposition of treble damages on innocent lenders could have a deleterious effect on the consumer credit market. Placing lenders at undue risk may result in higher interest rates thereby adversely affecting consumers. A court, especially a trial court, should think twice before breaking new legal ground in an area regulated by statute if the result might have serious adverse economic effects. See Gennari, supra, at 612-13, 691 A.2d at 368-69 ("Absent a clear expression of legislative *576 intent changing the common law rule, we are reluctant to read the New Jersey Consumer Fraud Act to encompass non-economic losses.").
As to counsel fees, the purpose of awarding counsel fees in CFA cases is to attract competent counsel to take cases involving only minor losses. Lettenmaier, supra, at 139, 741 A.2d at 593-94. This case does not involve minor losses. A substantial fund in court will likely be produced. Plaintiffs' counsel can be fairly compensated therefrom. See Court Rule 4:42-9(a)(2).
The court holds that plaintiffs may not recover from the defendants treble damages or counsel fees if that would result in a recovery in excess of the amount paid by the consumer. See Riggs, supra, at 417 (disallowing counsel fees against the lender in excess of the amounts paid by the consumer); Crews v. Altavista Motors, Inc., 65 F.Supp.2d 388, 391 (W.D.Va.1999) (FTC Holder Rule not designed to exact statutory and punitive damages against otherwise innocent creditors); But see Oxford, supra, at 465 (counsel fees allowed).

VIII
The defendant assignees seek to bar relief to all homeowners who signed releases in their favor. A release is a contract. Domanske v. Rapid-American Corp., 330 N.J.Super. 241, 246, 749 A.2d 399, 402 (App.Div.2000). Parties should be held to their contractual obligations. Furthermore, settlement of disputes ranks high in public policy. Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143, 146 (1990).
Consequently, those class members who signed releases are barred from recovery unless in a given case the member can show that the release was obtained by fraud or other wrongful conduct which would warrant the setting aside of the release.
Summary judgment is denied, but partial summary judgment is entered in accordance with this opinion.
NOTES
[1] This is a refinement of an oral opinion.